ARKANSAS DEPARTMENT of
ECONOMIC DEVELOPMENT and Larry Walther, Director *v.*
THE WILLIAM J. CLINTON PRESIDENTIAL FOUNDATION

05-104                                                   216 S.W.3d 119

Supreme Court of Arkansas
Opinion delivered October 27, 2005

*Mike Beebe*, Att'y Gen., by: *Mark A. Hagemeier* and *Patricia V. Bell*, Ass't Att'ys Gen., for appellant.

*Rose Law Firm*, by: *M. Jane Dickey, Amy Lee Stewart*, and *Amanda K. Wofford*, for appellee.

JIM GUNTER, Justice. This appeal arises from an order of the Pulaski County Circuit Court, granting declaratory judgment in favor of appellee, The William J. Clinton Presidential Foundation (Foundation), against appellants, Arkansas Department of Economic Development and its director, Larry Walther, in his official capacity (jointly ADED), on the issue of ADED's decision to deny the Foundation's application for a tax-incentive program. We affirm the circuit court's ruling.

ADED has the statutory authority for administering the Arkansas Advantage Program (Advantage Program), as provided by the Arkansas Enterprise Zone Act of 1993 (AEZA), codified at Ark. Code Ann. § 15-4-1701 *et seq.* (Repl. 2000 and Supp. 2001). The Advantage Program is a tax-incentive program that is designed to draw businesses to Arkansas by providing a refund for sales-and-use taxes for "any legitimate business enterprise" that meets one of the nine classifications enumerated in Ark. Code Ann. § 15-4-1704(b). The AEZA authorizes the ADED to oversee the implementation and operation of the Advantage Program. Ark. Code Ann. § 15-4-1703.

The Foundation is an Arkansas nonprofit corporation that was created in 1997. The Foundation chose to construct the William J. Clinton Presidential Center and Park in downtown Little Rock. The Foundation's articles of incorporation provide its purposes, which are "to establish and support a Presidential archival depository, . . . to house and preserve the books, correspondence, documents, papers, pictures, photographs, and other memorabilia of William J. Clinton, the President of the United States of America, as well as other objects or materials related to the papers or events of the official or personal life of William J. Clinton that have historical or commemorative value, and to undertake and support research and educational activities on policy and historical issues related to the life and work of William J. Clinton." The Foundation, which is housed in the Presidential Center and Park

in downtown Little Rock, has offices and employees in Arkansas and New York, and it is involved in projects throughout the country and around the world. According to the Foundation's complaint, these projects include "responding to challenges of the global neighborhood; responding to the challenge of September 11; promoting reconciliation and cooperation among the world's ethnic, racial, and religious groups; promoting economic empowerment through opportunity and responsibility; and supporting a new generation of leaders."

In August 2001, ADED received the Foundation's initial application for the Advantage Program. However, the Foundation's initial application was incomplete because a requisite Standard Industrial Classification Code was not included. ADED did not process the first application, and it is not at issue in the present appeal. On May 1, 2002, the Foundation submitted a second application for tax incentives under the Advantage Program. This application contained the code number 6732, a code which includes establishments primarily engaged in the management of funds of trusts and foundations organized for religious, educational, charitable, or nonprofit research purposes.

On May 24, 2002, ADED denied the Foundation's application. James Pickens, the former director of ADED, wrote a letter to the Foundation in which he stated that the Advantage Program was not available to nonprofit entities. ADED cited the following reasons for denying the Foundation's application: (1) the Advantage Program was limited to for-profit businesses, according to the *Black's Law Dictionary* definition of a "legitimate business enterprise;" (2) the Foundation was already exempt from paying corporate income tax, and ADED determined that the law "clearly intended to benefit businesses with income and income tax liability in order to take advantage of such benefits;" and (3) accepting the application would conflict with ADED's interpretation of the Emergency Clause of Act 1130 of 1999, particularly the terms, *competitive* and *invest*.

On June 5, 2002, the Foundation wrote ADED and requested a hearing under the Arkansas Administrative Procedure Act to review its decision to deny the Foundation's application. ADED replied, concluding that "current law does not, in our legal opinion, afford an administrative hearing to review our decision" because "[t]here is no provision under the [AEZA] providing for notice and hearing in this circumstance."

On July 18, 2002, after ADED's decision, the Foundation filed a complaint against ADED and Pickens, in his official capacity, regarding the denial of the application. In its complaint, the Foundation sought declaratory judgment that the Advantage Program under the AEZA applies to nonprofit as well as for-profit entities. The Foundation also alleged that, in denying the Foundation's application, ADED violated and exceeded its statutory authority under the AEZA. Further, the Foundation averred that ADED's denial of the Foundation's application was arbitrary and capricious. Finally, the Foundation alleged that ADED's denial of the Foundation's application was an error of law because "[t]he Foundation will be liable under Ark. Code Ann. § 26-51-304 for Arkansas income tax if any of its funds earn interest," and the Foundation "can use income tax credits authorized by the Advantage Program to offset tax liability on any interest income."

The parties filed cross-motions for summary judgment. On October 13, 2004, the circuit court entered an order, granting summary judgment in favor of the Foundation and reversing the decision of ADED. In its conclusion, the circuit court ruled:

> The court therefore finds and hereby declares that under the clear language of the Arkansas Enterprise Zone Act, at the time of plaintiff's application and defendant's rejection of the same, a "business" or "business enterprise" may be either for-profit or nonprofit. The court further finds that defendant ADED acted in a manner that was arbitrary and capricious, to the detriment of the plaintiff, in determining that the Arkansas Enterprise Zone Act excluded nonprofit corporations from its benefits, and in therefore rejecting plaintiff's otherwise compliant application for benefits under that Act. Plaintiff's motion for summary judgment is granted; Defendant's cross-motion for summary judgment is denied. Defendant is ordered to approve plaintiff's application made under Ark. Code Ann. § 15-4-1701 *et seq.*, such that the Revenue Division of the Department of Finance and Administration shall authorize a refund of sales and use taxes imposed on plaintiff's project and any income tax credits for which plaintiff may be eligible in accordance with § 15-4-1704(h), subject only to plaintiff's continuing compliance with the AEZA in accordance with this order.

ADED timely filed its notice of appeal on November 2, 2004.

Before we consider ADED's arguments on appeal, we note the procedural posture of this case and the applicable standard of review. In oral argument, ADED conceded that there was no adjudication by the agency, and therefore, the Administrative

Procedure Act did not apply. Under the Administrative Procedure Act, "[a]djudication" is defined as an "agency process for the formulation of an order." Ark. Code Ann. § 25-15-202(1) (Repl. 2002). "Order" is defined as "the final disposition of any agency in any matter other than rule making, including licensing and rate making, in which the agency is required by law to make its determination after notice and hearing." Ark. Code Ann. § 25-15-202(5) (Repl. 2002). Where there has been no adjudication before the administrative agency, there has been no "final agency action" to be reviewed pursuant to Ark. Code Ann. § 25-15-212. Here, ADED concedes that there was no adjudication, and moreover, a complaint for declaratory judgment, naming ADED as the defendant, was filed by the Foundation *after* ADED's denial of the Foundation's application. Both parties then filed cross-motions for summary judgment, and the circuit court ruled in favor of the Foundation. Because there is no ADED decision before us, we shall review the circuit court's order.

We recently articulated our standard of review in summary-judgment cases in *Rice v. Tanner*, 363 Ark. 79, 210 S.W.3d 860 (2005), where we stated:

> Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. This court views evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts.

*Rice, id.* (citations omitted).

For its first point on appeal, ADED argues the circuit court erred in ruling that ADED's interpretation of the AEZA applied only to for-profit businesses. Specifically, ADED argues that the

Foundation is not a "legitimate business enterprise" under the plain language of Ark. Code Ann. § 15-4-1704(a), and in order to qualify for the Advantage Program's sales-and-use tax refund, it must be read in conjunction with subsection (b), which enumerates nine classifications of businesses, and the Foundation must fit within one of those nine categories. ADED further contends that the Foundation is not a "legitimate business enterprise" even if we determine that Ark. Code Ann. § 15-4-1704 is ambiguous.

In response, the Foundation argues that the plain meaning of Ark. Code Ann. § 15-4-1704 makes nonprofit entities eligible for the tax incentives under the Advantage Program. Specifically, the Foundation contends that an interpretation of the AEZA to exclude nonprofit business would yield absurd results and would conflict with the legislative intent to provide incentives to businesses willing to bring jobs and resources to Arkansas. The Foundation further asserts that the plain meaning of "business" and "business entities" is consistent with the classifications and benefits of the AEZA and other statutes.

■ ■ The issue of whether the AEZA bars nonprofit entities from economic development incentives outlined in the Advantage Program is an issue of first impression. The question before us is two-fold: (1) whether the Foundation is a "legitimate business enterprise" under subsection (a), and (2) if the Foundation is a "legitimate business enterprise," whether it fits within one of the nine classifications under subsection (b). This question requires statutory interpretation. The basic rule of statutory construction is to give effect to the intent of the legislature. *Rose v. Arkansas State Plant Bd.*, 363 Ark. 281, 213 S.W.3d 607 (2005). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* However, when a statute is ambiguous, we must interpret it according to the legislative intent, and our review becomes an examination of the whole act. *Id.* We reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* We also look to the legislative history, the language, and the subject matter involved. *Id.* Additionally, stat-

utes relating to the same subject are said to be *in pari materia* and should be read in a harmonious manner, if possible. *Id.*

The statute at issue is Ark. Code Ann. § 15-4-1704, which provides in pertinent part:

> (a)(1) The Revenue Division of the Department of Finance and Administration shall authorize a refund of sales and use taxes imposed by the state and a municipality or county if the municipality or county authorized the refund of its local tax on the purchases of the material used in the construction of a building or buildings or any addition, modernization, or improvement thereon for housing *any legitimate business enterprise* and machinery and equipment to be located in or in connection with such a building.
>
> . . .
>
> (b) A sales and use tax refund as provided for in subsection (a) of this section shall be authorized, provided that the business is classified as one (1) of the following types of businesses:
>
> . . .
>
> (7) *A corporate or regional headquarters with no retail sales to the general public that creates twenty-five (25) or more net new full-time permanent jobs*[.]

Ark. Code Ann. § 15-4-1704(a) and (b) (emphasis added).

The first question is whether the Foundation is a "legitimate business enterprise" under subsection (a). Here, ADED, in a letter written by Jim Pickens, the former director of ADED, denied the Foundation's application to participate in the Advantage Program because, as a nonprofit entity, the Foundation did not fall within one of the nine classifications that constitute a "legitimate business enterprise" under the AEZA. In the letter, ADED stated that the Advantage Program "has uniformly been limited to for-profit businesses," and that based upon "historical practice" of ADED, nonprofit entities are ineligible for the tax refunds. In support of its ruling, ADED cited the fifth edition of *Black's Law Dictionary* for the definition of business enterprise as an "investment of capital, labor, and management in an undertaking for profit."

■ Based upon our rules of statutory construction, we construe "legitimate business enterprise" under subsection (a) to include nonprofit businesses. While ADED relied upon the fifth edition of *Black's Law Dictionary*, the *current* edition of *Black's Law Dictionary* provides the definition for "business enterprises" as

"[t]he field of law dealing with various forms of business, such as corporations, limited-liability companies, and partnerships." *Black's Law Dictionary* 211 (8th ed. 1999). We view this broad term, "various forms of business," to encompass nonprofit businesses as well. *See, e.g., Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985) (stating "[a]ctivities of eleemosynary, religious, or educational organization [sic] may be performed for a business purpose." *Id.* at 297 (citing 29 C.F.R. § 779.214 (1984)).

ADED contends that the trial court erred in finding that the AEZA included nonprofit businesses because the Consolidated Incentive Act of 2003, codified at Ark. Code Ann. § 15-4-2703(10), which consolidated and revised six earlier economic development acts, including the AEZA, expressly provides that tax incentives are available for for-profit businesses. The 2003 Act defines "eligible businesses" as "nonretail businesses engaged in commerce *for profit.*" Ark. Code Ann. § 15-4-2703(10) (emphasis added). Citing *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001), for the proposition that a subsequent amendment to a statute accomplishes substantive changes, the circuit court ruled that the legislature's addition of the words, "for profit," in the 2003 Act was substantive in nature, rather than an attempt to clarify the statute at issue. The circuit court further ruled that because this substantive change did not previously exist in the AEZA at the time the Foundation made its application, the statute at issue applied to both for-profit and nonprofit businesses.

██ We agree with the circuit court's reasoning. We have been hesitant to consider subsequent legislation in our interpretation of previous statutes. *Yamaha*, 344 Ark. at 53, 38 S.W.3d at 361. Here, the legislature accomplished substantive changes in the 2003 Act to exclude nonprofit businesses. However, at the time the Foundation made its application with ADED, the statute at issue did not expressly prohibit nonprofit businesses from participating in the Advantage Program. Thus, in light of this subsequent change in the 2003 Act, and in the absence of a definition of "legitimate business enterprise" provided by our legislature in the AEZA, we resort to the plain meaning of the term, and we hold that the Foundation's status as a nonprofit entity is a "legitimate business enterprise" under subsection (a).

Now that we have determined that the Foundation, as a nonprofit entity, qualifies as a "legitimate business enterprise"

under subsection (a), we then must determine whether it fits one of the nine classifications enumerated in subsection (b), particularly whether the Foundation qualifies as "a corporate or regional headquarters with no retail sales to the general public." *See* Ark. Code Ann. § 15-4-1704(b)(7).

The Foundation argued that it is classified as "a corporate or regional headquarters with no retail sales to the general public that creates twenty-five (25) or more net new full-time permanent jobs" under subsection (b)(7). Thus, there are three elements that the Foundation must meet: (1) a corporate headquarters, (2) with no retail sales to the general public, and (3) that creates twenty-five (25) or more net new full-time permanent jobs. Ark. Code Ann. § 15-4-1704(b)(7).

The circuit court, noting that ADED failed to state in its letter that it did not find the Foundation's proposed project to be a headquarters, stated that "[ADED] is barred from contending that the Foundation is not such a headquarters." Further, in reviewing the evidence submitted by the Foundation in its response to ADED's cross-motion for summary judgment, the circuit court ruled that the Foundation's application complied with one of the required categories as a corporate or regional headquarters because of its SIC classification noted on the application itself. In its order, the circuit court stated, "[T]he Foundation submitted evidence in the form of its application, which states that it is for the Foundation's corporate headquarters, and its SIC classification of 6732, for Corporate Headquarters for Private Charitable Foundation. . . . Having come forward with no proof whatsoever in its cross-motion for summary judgment. . . , [ADED has] not met their burden of proof under Ark. R. Civ. P. 56 to obtain summary judgment on that basis." The circuit court further ruled that the Foundation complied with the required, statutory category as a corporate or regional headquarters. We note that, while the circuit court's ruling interpreted § 15-4-1704(a) by applying our rules of statutory construction, the circuit court's ruling regarding § 15-4-1704(b) was based on a review of the evidence submitted in the cross-motions for summary judgment.

■ We agree with the circuit court's ruling. Here, the Foundation meets the three elements required by Ark. Code Ann. § 15-4-1704(b)(7). First, the Foundation falls within the definition of "corporate headquarters" as "the home or center of operations, including research and development, of a national or multinational corporation" under Ark. Code Ann. § 15-4-1702(2) (Supp. 2001).

The Foundation designated itself as a corporation with "Corporate Headquarters for Private Charitable Foundation under SIC Code 6732" on its application. Additionally, the Foundation's articles of incorporation provide, "*It is intended that the Corporation shall have the status of a corporation . . .[.]*" (Emphasis added.) The articles of incorporation further state that "[t]he corporation will solicit and accept gifts or bequests for the purposes of establishing, operating, protecting or improving the Presidential archival depository and of undertaking and supporting *research* and educational activities" (emphasis added). The Foundation further provided in its complaint that "[t]he Center and Park will be the national and international headquarters for the Foundation, which has programs throughout the world." The Foundation also alleged that it had employees in Little Rock and New York City. Therefore, based upon this evidence presented to the circuit court, the Foundation fits the first element of "corporate headquarters" as "the home or center of operations, including research and development, of a national or multinational corporation" under Ark. Code Ann. § 15-4-1702(2).

█ Second, the Foundation fits the second and third elements of Ark. Code Ann. § 15-4-1704(b)(7). With regard to the issue of whether the Foundation makes any retail sales, the following question is on the Foundation's application: "Does your company have retail sales to the public?" The Foundation responded, "No." Third, on the question of employees, the Foundation indicated on its application that it projected twenty-five new permanent employees after completion. Therefore, we hold that the Foundation falls within the seventh classification of Ark. Code Ann. § 15-4-1704(b)(7). We further conclude that the trial court did not err in finding that ADED did not provide the requisite proof-with-proof in this summary-judgment case to refute the Foundation's qualification as a corporate headquarters.

Next, ADED argues that the legislative intent behind Act 1130 of 1999 supported ADED's interpretation "that the legislature clearly intended for enterprise zone benefits to be limited to for-profit businesses," and its conclusion that the Foundation, "as a nonprofit entity, . . . is exempt from paying corporate income tax." In response, the Foundation argues that it competed with other states for the Foundation's headquarters, and moreover, the

words *competitive* and *invest* in the emergency clause "imply no special property of profit making, even in the daily parlance of Appellants."

The circuit court ruled that "ADED may well have erred in its conclusion that the Foundation is exempt from income tax, as the Foundation argues, but the court need not reach that point because the rules of construction of a non-ambiguous statute do not permit a study of other provisions to determine what the legislature 'must have intended.'" The circuit court further ruled that it need not reach the issue of legislative intent because it based its ruling on the plain language of "business" or "business enterprise."

■ We agree with the circuit court on this issue. We have stated repeatedly that if a statute is clear, we will not search for the legislative intent; rather, the intent must be gathered from the plain meaning of the language used. *Weiss v. Geisbauer*, 363 Ark. 508, 215 S.W.3d 628 (2005) (citing *Cave City Nursing Home, Inc. v. Ark. Dept. of Human Serv.*, 351 Ark. 13, 89 S.W.3d 884 (2002)). While we recognize that the parties argued this issue in their briefs, we decline to search for the legislative intent, as we have already concluded that the plain meaning of the term, "legitimate business enterprise," under the plain meaning of Ark. Code Ann. § 15-4-1704(a), includes the Foundation as a nonprofit entity.

■ For its second point on appeal, ADED argues that the circuit court was arbitrary and capricious in holding that ADED's determination that the AEZA excluded nonprofit businesses from its benefits. Specifically, ADED contends that "[a] review of the actions taken by ADED prior to denying the Foundation's application demonstrates it conscientiously reviewed the application and the law." In response, the Foundation concedes in its brief that the arbitrary-and-capricious standard is inapplicable to the case at bar. Because we review the circuit court's decision, rather than the agency's decision, we are not bound by an arbitrary-and-capricious standard of review, and we do not reach the merits of ADED's second point on appeal.

■ Based upon the foregoing reasons, we hold that the circuit court did not err in its ruling that the Foundation qualifies as a nonprofit entity under Ark. Code Ann. § 15-4-1704. Accordingly, we affirm that declaration by the circuit court.

Affirmed.

BROWN, J., concurs.

Robert L. Brown, Justice, concurring. I concur in the majority's result and write only to emphasize certain points.

First, the majority states that this court is reviewing the circuit court's order, but, in truth, we are only reviewing that part of the order, which declares that § 15-4-1704(b)(7) applies to nonprofit business corporations. There is no review of the Arkansas Department of Economic Development's (ADED's) denial to the Foundation of a sales-and-use-tax refund, which was the second part of the circuit court's order.

As a second point, we are deciding this issue solely on undisputed facts. The parties filed cross motions for summary judgment, indicating that there were no issues of material fact in dispute. The trial court then said, "[t]he parties agree that there are no genuine issues of material facts in dispute." Thus, the standard of review cited in the majority opinion for summary judgment relating to genuine issues of material fact is inapplicable.

On a related point, the trial court wrote, later in its order, that the ADED did not reject the Foundation's application based on the fact that it was not a corporate or regional headquarters under § 15-4-1704(b)(7). As a consequence, the court concluded that the ADED is banned from making that argument now. Furthermore, the trial court emphasized that the ADED failed to present any proof to contradict the Foundation's contention that the Foundation's building project was a corporate headquarters. Thus, the trial court concluded that the Foundation complied with one category for refund, § 15-4-1704(b)(7), which relates to corporate headquarters. Finally, counsel for the ADED did not dispute at oral argument before this court that the Foundation, as a nonprofit corporation, qualifies for a refund under the plain language of subsection (b)(7).

I mention all this to underscore that it is really beyond debate that the Foundation's project, albeit a nonprofit business, qualifies for a refund under subsection (b)(7). In short, because the Foundation's project qualifies as a nonprofit corporate headquarters under § 15-4-1704(b)(7), and because the project is one class of a "legitimate business enterprise" under § 15-4-1704(a), that decides the matter for me.

For these reasons, I concur.