OFFICE of CHILD SUPPORT ENFORCEMENT *v.*
Jason MORGAN

05-7                                                219 S.W.3d 175

Supreme Court of Arkansas
Opinion delivered December 8, 2005

*Paul D. Selby*, for appellant.

No response.

ANNABELLE CLINTON IMBER, Justice. This case is an appeal from the circuit court's dismissal with prejudice of a

second paternity suit filed against Appellee Jason Morgan. The first paternity suit, initiated on January 30, 1997, by the Office of Child Support Enforcement (OCSE) on behalf of LaNeza Mooney, alleged that Mr. Morgan was the biological father of LaNeza's daughter, Mahogony Mooney. Paternity testing was ordered by the court on March 4, 1997, and the results of the test showed a 0.00% that Mr. Morgan was Mahogony's biological father. Thereafter, a motion to dismiss was filed and the circuit court entered an order dismissing the suit without prejudice on April 28, 1997.

Seven years later, after being repeatedly instructed by OCSE to name another father, LaNeza filed a *pro se* motion requesting additional paternity testing, citing as her reason, "Because I know there is not a chance that the child isn't his." On December 19, 2003, the circuit court denied her motion, noting that the previous case had been dismissed without prejudice and another suit had not been filed. Then, on January 22, 2004, OCSE filed a new complaint re-alleging that Mr. Morgan was Mahogony's father and requesting additional testing. OCSE admitted that the previous action had been dismissed because of the results of the previous paternity test, but alleged that it had a duty to the mother pursuant to Ark. Code Ann. § 9-10-103(b)(5) (Supp. 2005) to secure additional testing for her. The complaint also stated that LaNeza objected to the results of the previous test and was able to pay in advance for retesting. At the April 29, 2004 hearing on the matter, the circuit court requested that OCSE provide authority for the proposition that it could dismiss a suit without prejudice and refile the same suit seven years later. OCSE prepared a letter brief on this point, but the circuit court ultimately dismissed the suit with prejudice on August 11, 2004. OCSE filed a motion for reconsideration on August 23, 2004, which the court denied on September 24, 2004. OCSE then filed a notice of appeal on October 4, 2004. The appeal was certified to us by the Arkansas Court of Appeals as an issue of statutory interpretation. Ark. R. Sup. Ct. 1-2(b)(6) (2005).

On appeal, OCSE challenges (1) the circuit court's determination that the original paternity suit should have been dismissed with prejudice and (2) the subsequent dismissal with prejudice of the second suit. Specifically, OCSE suggests that the rulings are clearly erroneous because dismissals with prejudice are void in paternity actions, pursuant to the rulings in *Davis v. Office of Child Support Enforcement*, 322 Ark. 352, 908 S.W.2d 649 (1995) and *State of Arkansas Office of Child Support Enforcement v. Flowers*, 57 Ark. App. 223, 944 S.W.2d 558 (1997).

In *Davis*, the appellant appealed a judgment finding him the father of Kerwin Sheppard and ordering him to pay child support. This judgment came in the third proceeding initiated by OCSE against Mr. Davis. The first action was dismissed without prejudice. Subsequently, Mr. Davis took a paternity test that showed the probability of paternity to be 99.65%. *Davis v. Office of Child Support Enforcement*, 322 Ark. at 354, 908 S.W.2d at 651. The second paternity proceeding was then dismissed with prejudice, after the parties reached a settlement. More than a year later, OCSE initiated a third suit for paternity and support, arguing that the dismissal with prejudice was void under Arkansas law. *Id.* at 355, 908 S.W.2d at 651. The trial court agreed and denied Mr. Davis's motion to dismiss. On appeal, Mr. Davis argued that the trial court should have granted his motion to dismiss the suit pursuant to Ark. R. Civ. P. 41 (2005), based on the prior dismissal with prejudice of the same action.

In reaching a decision in the *Davis* case, our court examined the trial court's duty to protect the interest of the minor:

> It has long been the law in Arkansas that the interests of a minor cannot be compromised by a guardian without approval by the court. It is not sufficient that a court be made aware of a compromise agreement and that it is agreeable to the guardian; rather, the court must make a judicial act of investigation into the merits of the compromise and into its benefits to the minor.

> The foregoing rules of public policy protecting minors have been applied to a child's right to support from his parents. Moreover, this court has stated that the duty of support is a continuing one and one that cannot be permanently bargained away by a parent to the child's detriment. Consequently, the parents' inability to permanently bargain away the child's right to support preserves the court's power to modify an order to meet subsequent conditions.

*Id.* at 355, 908 S.W.2d at 651 (internal citations omitted). Because the circuit court did not consider whether the settlement in the second suit was for the child's benefit, the court ruled that the order of dismissal was void on its face, and thus did not operate as a bar to the third suit.

Two years later, in *State of Arkansas Office of Child Support Enforcement v. Flowers, supra,* the Arkansas Court of Appeals faced a situation where the circuit court dismissed a paternity suit with

prejudice after one dismissal without prejudice and numerous attempts to bring the mother and child in for testing. The chancellor found that the mother had been uncooperative and the appellee had been cooperative throughout the proceedings. *Id.* The court of appeals, relying on *Davis*, determined that the dismissal with prejudice was void and modified the ruling to dismiss the action without prejudice. *Id.*

■ Pursuant to the decisions in *Davis* and *Flowers*, there is a strong public policy in Arkansas to protect the interest of the child in determining paternity. The *Davis* court noted, "[T]he major purpose of Arkansas's filiation law is to identify the putative father so that he may assume his equitable share of the responsibility to his child." *Davis v. Office of Child Support Enforcement*, 322 Ark. at 356, 908 S.W.2d at 652 (citing *Eaves v. Dover*, 291 Ark. 545, 726 S.W.2d 276 (1987)). Similarly, the *Flowers* court stated, "The chancellor's ruling granting the motion to dismiss would have served to bastardize the minor child, contravening state public policy." *State of Arkansas Office of Child Support Enforcement v. Flowers*, 57 Ark. App. at 226, 944 S.W.2d at 559. Here, the circuit court did not expressly determine that a dismissal with prejudice was in the best interests of the child. Moreover, at the time of the trial, paternity had not been established for Mahogony, and the only effect of a dismissal with prejudice is to permanently exclude Mr. Morgan from further paternity testing, even if a mistake in the original test could be demonstrated or if new and more reliable testing became available. Such a complete bar contravenes this state's strong public policy in favor of establishing paternity. Thus, we hold that the circuit court erred in dismissing the suit with prejudice.

■ OCSE also argues on appeal that the circuit court erred in considering equitable defenses not raised by Mr. Morgan. Specifically, it contends that the court considered defenses of statute of limitations, laches, waiver, and estoppel in finding that OCSE and the custodial parent had waited too long to request a second test. In its order, the circuit court stated:

> Here, this court finds that the first action, seven (7) years ago, was in fact dismissed because the Defendant was not the father. If OCSE or the mother had wanted a second test, either could have asked for one then — not seven (7) years later.

It is true that, generally speaking, parties are required to raise affirmative defenses before the trial court can consider those defenses. Ark. R. Civ. P. 8(c) states:

> *Affirmative Defenses.* In responding to a complaint, counterclaim, cross-claim or third party claim, a party shall set forth affirmatively accord and satisfaction, arbitration and award, comparative fault, discharge in bankruptcy, duress, estoppel, exclusiveness of remedy under workmen's compensation law, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, set-off, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. . . .

Ark. R. Civ. P. 8(c) (2005). Defenses enumerated in Ark. R. Civ. P. 8(c) must be specifically pled to be considered by the trial court. *Allen v. Wallis,* 279 Ark. 149, 650 S.W.2d 225 (1983). Here, Mr. Morgan did not plead the defenses of statute of limitations, laches, waiver, or estoppel, and the circuit court erred in considering those defenses in dismissing the suit.

In support of its argument, OCSE also points out that Ark. Code Ann. § 9-10-103(b)(5) authorizes it to petition the court for additional paternity tests for LaNeza. This section, establishing the procedures for administrative orders for paternity testing states:

> (b)(1) If the parentage of a child has not been established, the Office of Child Support Enforcement of the Revenue Division of the Department of Finance and Administration shall send a notice to the putative father, or mother, as appropriate, that he or she is a biological parent of the child. The notice shall inform the parties that the putative father and the mother of the child may sign an affidavit acknowledging paternity and that any party may request that scientifically accepted paternity testing be conducted to assist in determining the identities of the child's parents.
>
> . . . .
>
> (5) Any party who objects to the results of such paternity testing may request additional testing upon proper notice and advance payment for retesting, and the office shall assist the contestant in obtaining such additional testing as may be requested.

Ark. Code Ann. § 9-10-103(b)(1), (5) (Supp. 2005). Our court reviews issues of statutory construction *de novo,* as it is for the appellate

court to decide what a statute means. *Middleton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001). The basic rule of statutory construction is to give effect to the intent of the legislature. *Arkansas Dep't of Economic Development v. William J. Clinton Presidential Foundation*, 364 Ark. 40, 216 S.W.3d 119 (2005). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* However, when a statute is ambiguous, we must interpret it according to the legislative intent, and our review becomes an examination of the whole act. *Id.* We reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* We also look to the legislative history, the language, and the subject matter involved. *Id.* Additionally, statutes relating to the same subject are said to be *in pari materia* and should be read in a harmonious manner, if possible. *Id.*

■ The plain language of this statute suggests that it does not apply to court-ordered paternity testing. First, section 9-10-103 is devoted to paternity tests ordered by OCSE and not tests ordered by the court. A different provision, Ark. Code Ann. § 9-10-108, specifically deals with court-ordered paternity tests. Ark. Code Ann. § 9-10-108 (Repl. 2003). More importantly, while some language in section 9-10-103 incorporates the procedures of section 9-10-108,[1] there is no language in section 9-10-108 incorporating the protections of section 9-10-103. Thus, we conclude that the legislature did not intend for section 9-10-103(b)(5) to apply to court-ordered testing.

■ As the instant case involved court-ordered testing, the proper statute for consideration is Ark. Code Ann. § 9-10-108. That statute provides procedures for challenging the procedures or results of a paternity test:

> (5)(A) A written report of the test results prepared by the duly qualified expert conducting the test or by a duly qualified expert under whose supervision or direction the test and analysis have been

---

[1] *See, e.g.,* Ark. Code Ann. § 9-10-103(b)(2)(C); Ark. Code Ann. § 9-10-103(c).

performed certified by an affidavit duly subscribed and sworn to by him or her before a notary public may be introduced in evidence in paternity actions without calling the expert as a witness unless a motion challenging the test procedures or results has been filed within thirty (30) days of the trial on the complaint and bond is posted in an amount sufficient to cover the costs of the duly qualified expert to appear and testify.

(B)(i) If contested, documentation of the chain of custody of samples taken from test subjects in paternity testing shall be verified by affidavit of one (1) person witnessing the procedure or extraction, packaging, and mailing of the samples and by one (1) person signing for the samples at the place where same are subject to the testing procedure.

(ii) Submission of the affidavits along with the submission of the test results shall be competent evidence to establish the chain of custody of these specimens.

Ark. Code Ann. § 9-10-108(5). Though that statute does not explicitly provide procedures for requesting additional court-ordered tests, the statute also does not exclude such a possibility. In light of the legislative intent "that paternity of the children be established in the most expedient manner for all children of this state," we believe the legislature intended to give the circuit courts wide discretion to take actions to resolve the question of paternity. Act 986 § 5 of 1991.

The Supreme Court of Pennsylvania has examined the issue of granting additional paternity tests. *See, e.g., Cable v. Anthou*, 548 Pa. 551, 699 A.2d 722 (1997). In *Cable*, the Pennsylvania court examined the issue of whether, after obtaining one buccal swab test for paternity, a mother could request an additional test. The court held that the party requesting an additional paternity test must prove that the first test was defective before the court can compel a second paternity test, stating

We are sensitive to the fact that testing for paternity has the potential for harassment if a court were to grant every request for an additional test. As a result, the results of the initial paternity test remain viable and binding in the determination of paternity unless and until the proponent of the second test proves that the first test is not trustworthy. Once the movant proves that the first test was defective, then we weigh the parties' interests to determine whether a subsequent test is justified considering the Fourth Amendment privacy interests.

*Id.* at 560, 699 A.2d at 726 (internal citations omitted). We agree with this reasoning and adopt this standard for determining when a court can compel additional paternity tests.

In this case, the circuit court did not err in denying the request for an additional paternity test. While the court erroneously considered affirmative defenses not raised by Mr. Morgan, we will affirm a circuit court when it has reached the right result, even if for the wrong reason. *Office of Child Support Enforcement v. Pyron*, 363 Ark. 521, 215 S.W.3d 637 (2005); *Malone v. Malone*, 338 Ark. 20, 991 S.W.2d 546 (1999). Here, OCSE presented no evidence that the first paternity test was untrustworthy or defective. Instead, OCSE merely relies on LaNeza's statements that Mr. Morgan must be the father of Mahogony because she engaged in sexual intercourse with him during the time of conception. Such evidence is not enough to qualify OCSE for an additional paternity test.

■■ In light of the original test excluding Mr. Morgan as the father and OCSE's failure to make an adequate showing for an additional test, the circuit court did not err in dismissing the suit. However, pursuant to the decisions in *Davis* and *Flowers*, we. conclude that here the dismissal with prejudice is void and does not bar future proceedings. Accordingly, we modify the circuit court's ruling to dismiss OCSE's paternity action without prejudice and affirm.

Affirmed as modified.