## DAIMLERCHRYSLER CORPORATION *v.* Gaylord SMELSER

07–1006                                    289 S.W.3d 466

Supreme Court of Arkansas
Opinion delivered December 11, 2008

*Barrett & Deacon, A Professional Association*, by: *Kevin W. Cole* and *Brandon J. Harrison*, for appellant.

*James M. Pratt, Jr., P.A.*, by: *James M. Pratt*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Daimler-Chrysler Corporation appeals from a judgment entered against it in the Circuit Court of Columbia County for violation of the Arkansas New Motor Vehicle Quality Assurance Act ("Arkansas Lemon Law"), codified at Ark. Code Ann. §§ 4-90-401 to -417 (Repl. 2001). The judgment awarded Appellee Gaylord Smelser the sum of $41,489.26, plus attorney's fees, copy costs, and mileage expenses. Appellant raises two points of error on appeal: 1) the circuit court erred in declining to enforce a settlement agreement negotiated by the parties' attorneys; and 2) the circuit court erred in allowing Appellee to recover copy costs and mileage expenses under Ark. Code Ann. § 4-90-415(c). Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(5) and (b)(1) (2008). We find no error and affirm.

On July 14, 2003, Appellee Gaylord Smelser bought a 2003 Dodge 4WD-diesel truck manufactured by DaimlerChrysler Corporation from a Chrysler dealership in Camden, Arkansas. Almost immediately, he began having problems with the vehicle's transmission. Beginning in early August 2003, Appellee took the vehicle back to the Camden dealership for repair. Over the course of the next eight months, the vehicle was returned to the dealership a total of six times, but the transmission problem persisted. Appellee, with help from his daughter-in-law, Erin Smelser, then sent two letters to DaimlerChrysler's customer assistance center. In the first letter dated May 13, 2004, he demanded a repair within ten days under the Arkansas Lemon Law. Ark. Code Ann. § 4-90-406(a)(2) (Repl. 2001). After Appellant failed to respond, Appellee sent a second letter on June 25, 2004, demanding a replacement vehicle or a refund pursuant to Ark. Code Ann. § 4-90-406(b). When Appellant failed to respond to the second letter, Appellee hired attorney David P. Price to represent him.

A complaint was filed against Appellant in the Circuit Court of Columbia County on October 28, 2004. The complaint alleged claims for breach of implied warranty of merchantability and implied warranty of fitness for a particular purpose and for violation of the Arkansas Lemon Law. One year later, on September 23, 2005, Appellant filed a motion for summary judgment or, in the alternative, motion to enforce settlement, alleging that a settlement had been reached on April 6, 2005, between the parties' attorneys. In his reply to the summary-judgment motion, Appellee disputed the validity of any alleged settlement, claiming that his former attorney lacked authority to settle the matter. The circuit court declined to grant the motion to enforce settlement on the pleadings; instead, at a hearing in January 2007, the court heard testimony concerning the alleged settlement. Shortly thereafter, the circuit court denied Appellant's summary-judgment motion, finding that "there was not a settlement of the matter."

In the meantime, Appellee had hired his current attorney, James M. Pratt, Jr., after Mr. Price withdrew as counsel in July 2005. Appellee eventually nonsuited the two warranty claims, and the case went to trial in May 2007 on the remaining claim for violation of the Arkansas Lemon Law. Following a jury verdict in favor of Appellee, the circuit court entered its judgment on June 11, 2007, awarding Appellee the sum of $41,489.26. In a separate order entered on July 18, 2007, the court awarded Appellee attorney's fees and costs in the amounts of $11,100.00 and $197.50, respectively, pursuant to Ark. Code Ann. § 4-90-415(c). Appellant filed timely notices of appeal.

In its first point on appeal, Appellant argues that the circuit court erred in finding that there was no settlement of the matter between the attorneys. Appellant further suggests that the circuit court should have declared a settlement on the terms it deemed reasonably certain based on the proof. Appellee, on the other hand, contends there was no settlement agreement because the conflicting evidence shows there was no meeting of minds on a material term.

Courts will enforce contracts of settlement if they are not in contravention of law. *McCoy Farms, Inc. v. J & M McKee*, 263 Ark. 20, 563 S.W.2d 409 (1978), *reh'g denied* April 17, 1978. The essential elements of a contract include (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003). We keep in mind two legal principles when

deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005). Both parties must manifest assent to the particular terms of the contract. *Id.* Moreover, the terms of a contract cannot be so vague as to be unenforceable. *City of Dardanelle v. City of Russellville*, 372 Ark. 486, 277 S.W.3d 562 (2008). The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. *Id.*

In the instant case, Appellant has the burden of proving the existence of a contract. *See Thompson v. Potlatch Corp.*, 326 Ark. 244, 930 S.W.2d 355 (1996). Whether or not there was a meeting of the minds is an issue of fact, and we do not reverse a trial court's fact-finding unless it is clearly erroneous. *Sanford v. Sanford*, 355 Ark. 274, 137 S.W.3d 391 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We view the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the factfinder. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998).

Appellant asserts that the parties' attorneys reached a settlement agreement. In support of that assertion, Appellant points to a letter faxed by Appellant's attorney to Appellee's former attorney, David P. Price, on April 6, 2005. The letter states in pertinent part as follows:

> This letter confirms that we have settled this case premised upon the following:
>
> 1. $1,000.00 payable to you and your client to be applied toward fees and expenses;
>
> 2. Repair of the subject vehicle in accordance with the vehicle inspection conducted by the DaimlerChrysler field representative; this repair will be arranged through your office and will be completed at your local DaimlerChrysler dealership; and

3. In return, your client will execute a Release in favor of DaimlerChrysler.

On the same day, Appellant's attorney faxed a letter to the circuit court's case coordinator informing the court that the case had been settled and requesting that the trial scheduled for April 12, 2005, be canceled. Shortly thereafter, on April 15, 2005, Mr. Price informed Appellant's attorney that Appellee refused to accept the terms of settlement set forth in the April 6, 2005 letter. On May 10, 2005, Appellant's attorney sent Mr. Price a release and settlement agreement and consent order of dismissal, but Appellee never signed the documents.

During the hearing on Appellant's motion to enforce the settlement, Mr. Price testified that Appellee instructed him to initiate negotiations on a possible settlement. According to Mr. Price, he relayed the terms of the settlement to his client on April 6, 2005, and Appellee told him to "go ahead" with the settlement. Mr. Price admitted that he never sent Appellee the confirmation letter drafted by Appellant's attorney and that, during their meeting on April 15, 2005, Appellee denied ever authorizing the settlement. Mr. Price also testified to his understanding that the settlement would include a "lifetime warranty" for the vehicle. Mr. Price acknowledged, however, that he did not read or object to the terms contained in the confirmation letter. Appellee testified that Mr. Price never communicated with him about the settlement offer. In fact, when he called Mr. Price's office on April 11, 2005, Appellee still thought the case was going to trial on April 12, 2005. In sum, Appellee testified that he never authorized or agreed to the alleged settlement terms. His testimony was corroborated by Erin Smelser, Appellee's daughter-in-law.

As stated earlier, the April 6, 2005 confirmation letter drafted by Appellant's attorney provides for the "[r]epair of the subject vehicle in accordance with the vehicle inspection conducted by the DaimlerChrysler field representative; this repair will be arranged through your office and will be completed at your local DaimlerChrysler dealership." There is no reference in the letter to a "lifetime warranty," or any time period during which Appellant would be responsible for the repair. Appellee's former attorney, however, testified without objection that it was his understanding the "[t]ransmission was supposed to be fixed. . . . if there was going to be any problems with the transmission that was supposed to be taken care of for the duration of Mr. Smelser's

ownership of the vehicle." In other words, according to Mr. Price, the settlement included a "lifetime warranty." Once again, where there is conflicting testimony, the credibility of witnesses is for the trial judge to determine, and the court defers to the superior position of the trial judge in matters of credibility. *Koster v. State*, 374 Ark. 74, 286 S.W.3d 152 (2008). Based upon our review of the record in the instant case, we cannot say that the circuit court clearly erred in finding that there was no settlement of the matter. In view of our affirmance for the reasons stated above, we need not address the issue of whether Appellee's attorney lacked authority to settle the case.

The circuit court ruled, pursuant to Ark. Code Ann. § 4-90-415(c), that Appellee was entitled to recover copy costs and mileage expenses in the amount of $197.50. For his second point on appeal, Appellant challenges the circuit court's ruling, citing Rule 54(d) of the Arkansas Rules of Civil Procedure. According to Appellant, Rule 54(d) delineates what costs a prevailing party may recover, and copy costs and mileage expenses are not expressly permitted by the rule. Appellant further posits three reasons why section 4-90-415(c) should not be broadly construed to include mileage expenses or copy costs: (1) statutes providing for costs are strictly construed against the party seeking the award; (2) if the statute is broadly construed, requests for all types of travel and other expenses related to witnesses, attorneys, and paralegals will pour forth; and (3) it is unfair to construe the statute broadly since only "a consumer" can be a prevailing party under the statute.

Appellee, on the other hand, points out that, even assuming "costs" is a term of art under Rule 54(d), section 4-90-415(c) is not limited to the recovery of costs. The statute also allows a consumer to recover "expenses . . . reasonably incurred . . . for or in connection with the commencement and prosecution of the action." Ark. Code Ann. § 4-90-415(c). Appellee asserts that expenses in this case easily include the cost of copying exhibits and mileage.

We review issues of statutory construction de novo, as it is for this court to decide what a statute means. *Middleton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001). In this regard, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id*. The circuit court relied upon Arkansas Code Annotated section 4-90-415(c) in awarding copy costs and mileage. Section 4-90-415(c) reads as follows:

A consumer who prevails in any legal proceeding under this subchapter is entitled to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based upon actual time expended by the attorney, determined by the court to have been reasonably incurred by the consumer for or in connection with the commencement and prosecution of the action.

Ark. Code Ann. § 4-90-415(c) (Repl. 2001).

The basic rule of statutory construction is to give effect to the intent of the legislature. *State Office of Child Support Enforcement v. Morgan*, 364 Ark. 358, 219 S.W.3d 175 (2005). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* When the language of the statute is plain and unambiguous, conveying a clear and definite meaning, we need not resort to the rules of statutory construction. *Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 237 S.W.3d 87 (2006). However, when a statute is ambiguous, we must interpret it according to the legislative intent, and our review becomes an examination of the whole act. *Id.* We reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* We also look to the legislative history, the language, and the subject matter involved. *State Office of Child Support Enforcement v. Morgan, supra.*

The statute at issue does not define the terms "costs and expenses," or delineate what types of costs and expenses the legislature intended to include or exclude. Ark. Code Ann. § 4-90-415(c). The only guidance in the statute is that costs and expenses shall include attorney's fees and shall be "determined by the court to have been reasonably incurred by the consumer for or in connection with the commencement and prosecution of the action." *Id.*

Rule 54(d) of the Arkansas Rules of Civil Procedure specifically delineates what fees are taxable as "costs":

Costs taxable under this rule are limited to the following: filing fees and other fees charged by the clerk; fees for service of process and subpoenas; fees for the publication of warning orders and other notices; fees for interpreters appointed under Rule 43; witness fees and mileage allowances as provided in Rule 45; fees of a master appointed pursuant to Rule 53; fees of experts appointed by the court pursuant to Rule 706 of the Arkansas Rules of Evidence; and expenses, excluding attorney's fees, specifically authorized by statute to be taxed as costs.

Ark. R. Civ. P. 54(d)(2) (2008). Even if we assume that costs are limited to those items set forth in Rule 54(d), section 4-90-415(c) also allows a consumer who prevails to recover "expenses," including attorney's fees. We do not construe statutes to leave any word void or superfluous. *State Office of Child Support Enforcement v. Morgan, supra.* Thus, the legislature must have contemplated a distinction between costs and expenses.

■ "Expense," as defined in *Black's Law Dictionary*, means "[t]hat which is expended, laid out or consumed; an outlay; charge; cost; price." *Black's Law Dictionary* 687 (Revised 4th ed. 1968). The legislature has expressly designated attorney's fees as a recoverable expense. Otherwise, the only limitation on the recovery of any expenditure or outlay is that the court must determine it to have been reasonable and incurred in connection with the prosecution of an action under the Arkansas Lemon Law. Such a limitation insures against a windfall for Lemon Law claimants. In essence, section 4-90-415(c) seeks to make a prevailing consumer whole.

This interpretation is consistent with other provisions that provide a broad range of remedies to a consumer. Section 4-90-406(b)(1)(B) provides that a consumer can recover all collateral or reasonably incurred incidental charges as part of the replacement or refund. Ark. Code Ann. § 4-90-406(b)(1)(B) (Repl. 2001). Section 4-90-414(b)(6) provides that a consumer may not be charged with a fee to participate in an informal dispute proceeding. Ark. Code Ann. § 4-90-414(b)(6) (Repl. 2001).

■ Finally, Appellant claims it is unfair to construe the statute broadly since "only 'a consumer' can ever be a prevailing party under the statute." It is evident from the plain language of the Arkansas Lemon Law that the legislature sought to address the hardship a defective vehicle creates for a consumer. Ark. Code

Ann. § 4-90-402 (Repl. 2001). The legislature intended that a good-faith motor vehicle warranty complaint by a consumer be resolved by the manufacturer within a specific period of time. The statute also provides for an informal dispute settlement proceeding at the option of the manufacturer. Ark. Code Ann. § 4-90-414 (Repl. 2001). If the manufacturer fails to resolve a good-faith complaint, it will be at the manufacturer's peril to let the dispute be resolved in court.

The circuit court determined that copy costs and mileage expenses totaling $197.50 were reasonably incurred in connection with the instant litigation. Accordingly, we hold that the circuit court did not err in interpreting section 4-90-415(c) to allow for the recovery of those expenses.

Affirmed.