The Honorable John Threet Prosecuting Attorney Fourth Judicial District Washington County Courthouse
280 North College Avenue, Suite 301 Fayetteville, Arkansas 72701
Dear Mr. Threet:
You have asked for my opinion about A.C.A. § 27-51-403 (Repl. 2010). Specifically, you ask:
 Section 27-51-403 has caused some confusion with some people in law enforcement. Are the requirements [set out in section 27-51-403] of giving an appropriate signal only required when other traffic is present? In other words, to be in violation of section 24-51-403(b), does other traffic need to be present?
RESPONSE
Yes. As explained more fully below, the statute's language, on its face, requires that others be present before the obligation to signal arises. I recognize, however, that one might argue that the statute is ambiguous about whether motorists must signal only when others are present. To the extent there is any ambiguity, the statute's historical development — which is explained below — clearly indicates that the legislature intended motorists to signal only when others are present. *Page 2 
DISCUSSION
Your question is one of statutory interpretation. The goal of all statutory interpretation is to give effect to the legislature's intent. When the statute's language is unambiguous, we determine that intent from the ordinary meaning of the statute's wording. If possible, the statute is read so that no word is left superfluous or insignificant. But if the statute is ambiguous, we resort to the rules of statutory construction. Statutes are ambiguous if they are open to two or more plausible readings. When employing the rules of construction, we assess the statute's history, language, and subject matter.[1]
With these principles in mind, we can turn to the language of section 27-51-403, which states:
 (a) No person shall turn a vehicle from a direct course upon a highway unless and until the movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement or after giving an appropriate signal in the manner provided in subsection (b) of this section in the event any other vehicle may be affected by the movement.
 (b) A signal of intention to change lanes or to turn right or left shall be given continuously during not less than the last one hundred feet (100') traveled by the vehicle before changing lanes or turning.
 (c) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in this subchapter to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.
In my opinion, a court faced with your question would hold that section 27-51-403 unambiguously requires motorists to signal an intent to change lanes only if "any other vehicle may be affected" by the lane change. Alternatively, if a court were to find the statute ambiguous, it would likely resort to the statute's history, which plainly shows the legislature's intent that the obligation to signal only arises if *Page 3 
others may be affected by the lane change. I will address both possible holdings in turn.
In my opinion, the wording and structure of section 27-51-403 would likely compel a court to hold that the statute is unambiguous. Considering the structure, subsections (a) and (c) provide the occasions for signaling. Subsection (a) requires two kinds of signals: an audible signal "if any pedestrian may be affected by the movement"; and "an appropriate signal given in the manner provided in subsection (b)" if "any other vehicle may be affected." In both cases, subsection (a) requires a signal onlyif another may be affected by the movement. The signal must be audible if the one affected is a pedestrian; but if the one affected is another vehicle, the single must be "as provided in subsection (b)." Likewise, subsection (c) requires one to signal "in the manner provided in this subchapter" on the occasion that one "stop[s] or suddenly decrease[s] the speed of a vehicle." In sum, subsections (a) and (c) provide three different occasions for signaling; two of which direct the reader to subsection (b) for the "manner" of signaling.
The "manner" of signaling that subsection (b) prescribes requires one to signal "continuously during not less than the last one hundred feet (100') traveled by the vehicle before changing lanes or turning." Because subsection (b) is only triggered by one of the occasions referenced in subsections (a) or (c), (b)'s reference to "changing lanes or turning" is most naturally read in that context. Accordingly, subsection (b)'s reference to "changing lanes" is not a stand-alone provision. Instead, it is merely an example of one kind of a "turn from a direct course" as subsection (a) contemplates: "No person shall turn a vehicle from a direct course upon a highway unless and until the movement can be made with reasonable safety and then only . . . after giving an appropriate signal in the manner provided in subsection (b) of this section in the event any other vehicle may be affected by the movement."
Therefore, when subsection (b) is read in context, not in isolation, the intent behind the statute is clear. Motorists must only signal their intent to change lanes if that movement might affect others.
Alternatively, one might argue that the statute requires a different result because the phrase "change lanes" only occurs in subsection (b). One might infer from such an isolated reading of subsection (b) that, because the presence of other vehicles is never mentioned in that subsection, the signal requirement for changing lanes applies regardless of whether others are present. In my opinion, such an *Page 4 
argument ignores the internal references in section 27-51-403 noted above, which means such an argument is not a reasonable interpretation of the statute.
But if a court found this argument plausible, then the court would be faced with two incompatible readings of the statute. Being so confronted, and finding them both plausible, the court would declare the statute ambiguous and resort to the rules of construction. After employing those rules, the court would assess the statute's original wording, which, in my opinion, clearly indicates the signal requirement only applies if others may be affected.
As originally worded, section 27-51-403 was nearly identical with the present version:
 (a) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by the movement.
 (b) A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.
 (c) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.[2]
After examining this original wording, we find that subsections (a) and (c) always, and even more clearly, prescribed theoccasions for signaling, whereas subsection (b) prescribed themanner of signaling. And in all three occasions in which one was required to signal, the requirement to signal was only triggered by the probability that someone else might be affected by the movement. Thus, we find the signal requirement originally being tied to the presence of others. *Page 5 
This is also, given the subject matter, the common sense reading of the statute. Every signal "of an intention" is, by definition, a signal to someone or something. There is always a signaler, a sign, and the one to whom the sign is directed. Without the latter, signals "of an intention" lose their intrinsic function to signify something to another. Given that the subject matter deals with signaling one's intention to "turn from a direct course," the subject matter requires that there be another person present. This intrinsic function of signs is manifested by the fact that all three occasions for signaling require the presence of others.
Further, even though the original wording never mentions "changing lanes," that kind of movement is clearly encompassed in subsection (a)'s language regarding "turn[ing] a vehicle from a direct course." Accordingly, it is plausible that even before the 2007 amendment, section 27-51-403 only required motorists to signal a lane change if the change affected others. Therefore, the 2007 amendment — which added "change lanes" to subsection (b) — is most naturally read as a clarification of the legislature's longstanding intent, not a change from it.
In summary, then, a court faced with your question would likely hold that section 27-51-403 unambiguously requires motorists to signal a lane change only if others may be affected by that change. Alternatively, if a court is persuaded of the plausibility of other arguments based on the statute's wording, then the court would declare the statute ambiguous. Nevertheless, after employing the rules of statutory construction, the court, in my opinion, would likely find the statute requires motorists to signal an intent to change lanes only if the movement might affect others.
Assistant Attorney General Ryan Owsley prepared this opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/RO:cyh
[1] DaimlerChrysler Corp. v. Smelser,375 Ark. 216, 222, 289 S.W.3d 466, 472 (2008) (internal citations omitted).
[2] Act 300 of 1937, § 67 (emphasis added).