2009 Ark. App. 687

**Amanda THOMSEN, Appellant,**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellee.

**No. CA 09–610.**

Court of Appeals of Arkansas.

Oct. 21, 2009.

Deborah R. Sallings, Arkansas Public Defender Comm'n, Leah Lanford, Little Rock, for appellant.

Gray Allen Turner and Tabitha B. McNulty, Office of Chief Counsel, Keith L. Chrestman, Jonesboro, for appellee.

JOHN B. ROBBINS, Judge.

⌊The Washington County Circuit Court terminated appellant's parental rights to L.S. (born July 24, 2000), L.E. (born October 24, 2001), K.T. (born February 2, 2004), and N.T. (born December 6, 2005). For reversal, appellant argues that the circuit court erred in finding that termination was in the children's best interest and in finding that the Arkansas Department of Human Services ("DHS") made a meaningful effort to reunite her with the children. We affirm.

On April 22, 2008, DHS placed a seventy-two-hour hold on the children after appellant's husband, Gary Thomsen, was arrested for the rape of six-year-old L.E. DHS filed a petition for emergency custody and an affidavit stating that appellant knew that Thomsen had exposed the children to pornography and had given them alcohol. The affidavit also stated that DHS had been involved with appellant's family in a protective-services case since 2005 and that appellant had not followed through with services for the children. On these allegations, the circuit court granted emergency custody to DHS on April 23, 2008.

Approximately two weeks later, the court found probable cause to issue the emergency-custody order and to maintain the children in DHS custody. The court granted appellant one hour per week of supervised visitation and ordered appellant to cooperate with DHS and follow court orders; to keep DHS informed of her place of residence; to maintain contact with her attorney; to refrain from using illegal drugs or alcohol; to obtain and maintain stable housing and employment; to maintain a clean, safe home; and to demonstrate the ability to protect the children and keep them safe from harm.

On July 3, 2008, the court adjudicated the children dependent-neglected after finding that the allegations in the DHS affidavit were true and correct. The court established a goal of reunification and reiterated its previous directives to appellant. The court also ordered appellant to undergo a psychological evaluation and follow recommendations; to participate in individual counseling; to complete parenting classes and demonstrate improved, appropriate parenting; and to follow through with her attempts to obtain disability benefits or a job.

A subsequent review order found appellant in partial compliance with the court's orders. The court continued the goal of reunification and emphasized that appellant should call her DHS caseworker once a week and obtain employment.

On December 3, 2008, the court held a permanency-planning hearing and changed the goal of the case to termination of parental rights. The court found that, although appellant had attended counseling and completed parenting classes, appellant could not "put into practice what she should have learned," despite three years of DHS services. The court noted that appellant had not called her DHS caseworker once a week; that appellant had not obtained employment; and that appellant's mother, with whom appellant lived, could not pass a DHS home study due to the mother's own previous involvement with DHS. The court scheduled a termination hearing for February 25, 2009, and ordered appellant to "get a job by Jan 15th, 2009 and keep the job."

The evidence at the termination hearing revealed that appellant had divorced Gary Thomsen and was living with her mother, Teresa Bearden, and Bearden's boyfriend, David Turner. Bearden testified that appellant was unemployed and that Turner provided for the family. Bearden also stated that appellant was pregnant by Turner's brother, who was married to another woman. Bearden said that she had frequently told appellant to "get rid of" Thomsen but that, when appellant tried to do so, Thomsen would "sweet talk" his way back into the home. Bearden admitted to having a long history with DHS, to abusing one of her sons, and to sending appellant to live with a relative when appellant was sixteen.

Appellant testified that she lived with her mother and had applied for jobs without success. She also stated that she was

thirty-three weeks pregnant and had no relationship with the baby's father other than friendship. Appellant testified further that she had made Gary Thomsen leave her home in December 2007 (prior to the children being taken into custody) but that DHS caseworker Darla Hash encouraged her to let Thomsen return, even after the sexual-abuse allegations came to light. Appellant also stated that she wanted to participate in family counseling and that Ms. Hash had arranged for it, apparently during the protective-services case, but that Gary Thomsen would not permit it.

Caseworker Darla Hash testified that DHS opened a protective-services case on appellant's family in 2005. Hash stated that DHS had provided numerous services to appellant since that time, including transportation, Medicaid, Christmas gifts, food stamps, drug-and-alcohol assessments, drug tests, psychological evaluations, daycare services, children's counseling, clothing, and supervised visitation. Hash also said that DHS offered intensive family services and counseling to appellant during the protective-services case but that appellant did not participate. In the present case, Hash stated, appellant underwent a psychological evaluation, participated in individual counseling, took parenting classes, passed her drug screens, and visited the children regularly. However, according to Hash, appellant had no driver's license or transportation, had no job or disability income, had no home of her own, and was seven months pregnant. Hash also testified that appellant did not have a Medicaid card and had not received prenatal care for her current pregnancy. Further, Hash stated, DHS had denied a home study on appellant's mother's residence due to the mother's long history with DHS. Hash concluded that the mother's home was not an appropriate place for the children and that DHS could never close the protective-services case if the children were placed there.

Hash also testified that she may have told appellant that it was advisable for Gary Thomsen to move back into the home, given that Thomsen paid all of the bills, took the children to their appointments, and cooperated with the school. However, Hash stated unequivocally that, if she did give such advice, she did so prior to Thomsen's arrest on rape charges. Finally, Hash testified that the children were adoptable and that it was in the children's best interest to terminate appellant's parental rights.

DHS also introduced appellant's psychological evaluation, which was performed by Dr. Martin Faitak. According to the evaluation, appellant told Dr. Faitak that Gary Thomsen began drinking and engaging in violent behavior in 2005 and that she tried to end her relationship with him twice, including in December 2007. However, appellant reported Thomsen would pay child support if he was in the home and that this encouraged her to allow him to return. Dr. Faitak observed that appellant possessed some of the skills and capacities normally required for parenting but that she demonstrated weakness and dependence in relationships. The doctor also noted that appellant was physically healthy, appropriately groomed, and a high-school graduate but that she had never held a regular job or had a driver's license and that she reported spending most of her time at her mother's house cleaning and watching television.

Other witnesses testified that appellant's visits with the children were appropriate and that the children were doing well in foster homes, other than K.T., who exhibited bizarre behavior and suffered from post-traumatic stress disorder. Additionally, appellant introduced a report from her counselor, Kathleen Housley, which

stated that appellant needed family counseling with L.E. and L.S. before reunification could occur.

On March 19, 2009, the circuit court entered an order terminating appellant's parental rights to her four children. The court found that appellant had never been in full compliance with court orders and that appellant did not have a job or her own place to live. The court also found that appellant continued to show poor judgment in choosing men and continued to have dependent relationships. The court ruled that termination was in the children's best interest and that the following grounds for termination were proved by clear and convincing evidence: 1) the children were adjudicated dependent-neglected and had continued out of appellant's custody since April 22, 2008, and, despite meaningful efforts by DHS to rehabilitate appellant and correct the conditions that caused removal, those conditions were not remedied by appellant; 2) the children were adjudged dependent-neglected as a result of neglect or abuse that could endanger their lives, sexual abuse, or sexual exploitation, any of which was perpetrated by the children's parent or parents; 3) other factors or issues arose subsequent to the filing of the original dependency-neglect petition that demonstrated a return of the children to appellant's custody was contrary to their health, safety, or welfare and that, despite the offer of appropriate family services, appellant manifested an incapacity or indifference to remedying the subsequent issues or factors or rehabilitating her circumstances that prevented returning the children to her. See Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(*a*), (vi)(a), (vii)(a) (Supp. 2009). Appellant appeals from that order.

■ Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Lee v. Ark.*

*Dep't of Human Servs.,* 102 Ark.App. 337, 285 S.W.3d 277 (2008). An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence that termination is in the child's best interest and that at least one statutory ground for termination exists. Ark. Code Ann. § 9–27–341(b)(3)(A), (B). When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Lee,* 102 Ark.App. 337, 285 S.W.3d 277. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We review termination-of-parental-rights cases de novo. *Id.*

■ Appellant argues first that DHS presented insufficient evidence that termination was in the children's best interest. In deciding the best-interest question, the circuit court must consider two factors: 1) the likelihood that the child will be adopted if parental rights are terminated, and 2) the potential harm in returning the child to the parent. Ark.Code Ann. § 9–27–341(b)(3)(A). Appellant does not challenge DHS's proof of the children's adoptability. Instead, she argues that DHS did not present sufficient evidence of potential harm.

■ We note at the outset that section 9–27–341(b)(3)(A) does not require DHS to prove potential harm by clear and convincing evidence; rather, the statute simply identifies potential harm as a factor the circuit court must consider in its best-interest analysis. *See Dowdy v. Ark. Dep't of Human Servs.,* 2009 Ark.App. 180,

314 S.W.3d 722; *Lee,* 102 Ark.App. 337, 285 S.W.3d 277. The circuit court's obligation is to determine, after considering all factors, whether there is clear and convincing evidence that termination is in the child's best interest. *See McFarland v. Ark. Dep't of Human Servs.,* 91 Ark.App. 323, 210 S.W.3d 143 (2005). The circuit court is not required to affirmatively identify a potential harm or to find that actual harm would result if the child were returned to the parent. *Dowdy,* 2009 Ark. App. 180, 314 S.W.3d 722. The potential-harm analysis is to be conducted in broad terms. *Lee,* 102 Ark.App. 337, 285 S.W.3d 277.

In light of these standards, we cannot say that the circuit court clearly erred in finding that termination was in the children's best interest. Beginning in 2005, DHS offered appellant numerous services. Yet, appellant did not profit from those services or fully participate in them. In 2008, appellant failed to protect the children from harm by knowingly allowing Gary Thomsen to expose them to pornography and give them alcohol. After the children were removed from the home, the court repeatedly emphasized that appellant should obtain suitable housing and employment. However, by the time of the termination hearing, ten months into the case, appellant had not met, nor did she appear likely to meet, these basic requirements for supporting herself and her children. The evidence shows that she had virtually never been employed, that she spent her days at her mother's housing cleaning and watching television, that she permitted her mother's boyfriend to support her, and that she was pregnant with another child whom she had no prospects of being able to support on her own. Under these circumstances, we conclude that the circuit court was mindful of all factors presented by the evidence and met its statutory duty to consider the potential harm in returning the children to appellant. We therefore see no flaw in the court's best-interest analysis nor any reason for reversal on this point.

Appellant argues, however, that DHS "undermined" her by advising her to let Gary Thomsen return home after she had evicted him. During appellant's testimony, she went so far as to say that caseworker Darla Hash gave her this advice after Thomsen had been charged with raping one of the children. Hash denied this, and the circuit court found appellant's testimony in this regard completely incredible. We defer to the circuit court on such credibility questions. *See Posey v. Ark. Dep't of Human Servs.,* 370 Ark. 500, 262 S.W.3d 159 (2007). Furthermore, even if Hash did recommend that appellant allow Thomsen to return home during the protective-services case, she did so because Thomsen appeared to be the more reliable party in terms of meeting day-to-day responsibilities. There is no evidence that, at that point, Hash was aware of any inappropriate behavior by Thomsen toward the children. In any event, we fail to understand how DHS's recommendation regarding Gary Thomsen during the protective-services case had any bearing on appellant's failure, ten months into the present case, to obtain appropriate housing or employment.

For her second point on appeal, appellant argues that the circuit court erred in finding that DHS made a meaningful effort to reunite her with her children. Specifically, appellant contends that DHS should have provided her with family therapy, as recommended by one of the children's counselors and her own counselor, Kathleen Housley.

Appellant bases her "meaningful efforts" argument on the statutory ground for termination found at Ark.Code Ann.

§ 9–27–341(b)(3)(B)(i)(*a*), which reads as follows:

That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, *despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal,* those conditions have not been remedied by the parent.

(Emphasis added.) However, this ground does not apply to appellant because, at the time the court entered the termination order, the children had not yet been out of appellant's custody for twelve months. Moreover, the order lists two other grounds for termination that do not depend on the amount of time the children have been removed from the home, and appellant challenges neither of those grounds. When an appellant fails to attack the trial court's independent, alternative basis for its ruling, we will not reverse. *See Pugh v. State,* 351 Ark. 5, 89 S.W.3d 909 (2002); *Pearrow v. Feagin,* 300 Ark. 274, 778 S.W.2d 941 (1989); *Morehouse v. Lawson,* 90 Ark.App. 379, 206 S.W.3d 295 (2005); *Camp v. State,* 66 Ark. App. 134, 991 S.W.2d 611 (1999). In any event, the record contains evidence that appellant received numerous services from DHS and that she previously declined to participate in family therapy when it was offered.

For these reasons, we affirm the termination order.

Affirmed.

MARSHALL and BAKER, JJ., agree.