2009 Ark. App. 751

**Karen HARDY, Appellant,**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellee.

**No. CA 09–726.**

Court of Appeals of Arkansas.

Nov. 11, 2009.

Leah Beth Lanford, Little Rock, for Appellant.

Tabitha Baertels McNulty, Little Rock, Keith L. Chrestman, Jonesboro, for Appellee.

JOHN B. ROBBINS, Judge.

Karen Hardy brings this appeal from the order of the Ashley County Circuit Court in a dependency-neglect matter that ordered no reunification services to Hardy

and awarded temporary custody of Hardy's daughter to Hardy's parents. For reversal, Hardy argues that the circuit court erred in *sua sponte* ordering no reunification services and in awarding custody to her parents when there had been no material change in circumstances. The Arkansas Department of Human Services and the attorney *ad litem* have filed a joint brief in which they acknowledge that statutory law required that Hardy be notified prior to the hearing that no reunification services would be ordered. DHS and the attorney *ad litem* do not address the custody issue. Because we agree with Hardy's first point, we reverse and remand for further proceedings without reaching Hardy's second point.

*Background*

Hardy and Donny Ray Hall are the parents of two children, a daughter, A.L.H., born June 9, 2003, and a son, J.T.H., born January 11, 2001. Hardy and Hall were divorced in Ashley County by decree entered on April 24, 2007. That decree incorporated a settlement agreement that provides that the parties have two children and that Hall pay child support of $205 per week. Thereafter, Hardy married Thomas Hardy.

In September 2007, DHS opened a protective-services case based on A.L.H. being sexually abused by Thomas Hardy. The present case began on October 9, 2008, when DHS received a referral that A.L.H. was again being sexually abused by Thomas Hardy when she was left alone with him. DHS exercised a seventy-two-hour emergency hold on the children on October 10, 2008. The circuit court granted DHS emergency custody and later found probable cause for entry of the emergency order.

On November 20, 2008, the court held an adjudication hearing and found the children to be dependent-neglected. The court found that Hardy was aware of the abuse because A.L.H. had told her the same thing that she told the DHS workers. The court also found that Hardy was told during the earlier protective-services case that the children would be removed from her custody if she allowed Thomas Hardy to return to the household. Hardy was allowed supervised visitation with the children.

On December 12, 2008, Judge Sam Pope entered an order and a separate document containing separate findings and conclusions, captioned with the style of both the dependency-neglect proceeding and the divorce case. Judge Pope had been asked to preside over the disposition stage of the adjudication hearing. The court found that the details of the earlier 2007 incidents of sexual abuse by Thomas Hardy against A.L.H. were kept from Hall by Karen Hardy because she feared losing custody. Karen Hardy was faulted for not giving enough credence to the 2007 abuse reported by A.L.H. and for allowing Thomas Hardy to return to the home to again abuse A.L.H. The court conditioned the return of J.T.H. to Karen Hardy's custody on Thomas Hardy remaining out of the home. As to A.L.H., the court found that she should remain in DHS's custody until the divorce between Karen and Thomas Hardy was finalized and the order of protection was made permanent. Once these contingencies occurred, and the court was satisfied that Karen Hardy had kept Thomas Hardy out of her home, the court intended to return custody of A.L.H. to Karen Hardy.

On January 27, 2009, the divorce decree between Karen Hardy and Thomas Hardy was entered. The decree noted that Karen Hardy was pregnant with an expected due date of June 1, 2009. Thomas Hardy was not to have any visitation pending the

further orders of the court. On the same date, the court also entered a final order of protection against Thomas Hardy that was to last until January 27, 2010. Thomas Hardy was not to have any contact, directly or indirectly, with Karen Hardy, including no written, personal, or oral communication.

### ⌊Evidence at Trial

The review hearing from which this appeal is taken was held on February 25, 2009. Carveyetta Bridges, the DHS case worker, testified that Hardy was still having email contact with Thomas Hardy. Based on the series of emails, Bridges recommended that A.L.H. remain in foster care. According to Bridges, the emails were dated after Karen Hardy had obtained an order of protection and indicated that she wanted Thomas Hardy to remain part of her life. On cross-examination, Bridges said that Karen Hardy had consistently denied any contact with Thomas Hardy. According to Bridges, one of the emails indicated that Karen Hardy initiated the contact with Thomas Hardy. She also acknowledged that Judge Pope did not order Karen Hardy not to have any contact with Thomas Hardy.

Karen Hardy testified that her divorce from Thomas Hardy had been finalized and that she had been granted an order of protection. She said that the last time she and Thomas Hardy were in the same room together was on October 16, 2008, at a court hearing. She acknowledged that she had talked with him on the phone and had sent him email. She said that she was pregnant with Thomas Hardy's child, but did not intend to have further contact with him or have him around the children. On cross-examination, Hardy admitted that she testified before Judge Pope that she had no connection with Thomas Hardy. She said that the purpose of the emails was to inform Thomas Hardy of the status of the divorce case and to discuss details of the divorce. Hardy acknowledged that she did not tell DHS that she was⌊₅having email contact with Thomas Hardy because she was trying to get him served with divorce papers so she could regain custody of her children.

### The Circuit Court's Ruling

On March 31, 2009, the court announced its ruling from the bench. The court found that Hardy could not protect A.L.H., and that it would not be in A.L.H.'s best interest to be reunified with Hardy. The court noted that Hardy had no credibility with the court, and that Hardy's continued email contact with Thomas Hardy constituted a material change of circumstances. Noting that J.T.H. was autistic and reacted poorly to change, the court allowed J.T.H. to remain in Hardy's custody. As to A.L.H., the court wanted to listen to the testimony presented before Judge Pope at the earlier disposition hearing. Until that was done, the court, over Hardy's objection, temporarily placed custody of A.L.H. with the grandparents. Hardy's visitation was to be supervised by the grandparents. The court then stated that it did not want DHS to pursue the goal of reunification with Hardy, as provided in the earlier order. The court also allowed, over DHS's objection, the grandparents to intervene in the case to seek permanent custody or guardianship of A.L.H. The court entered its order from the review hearing on March 31, 2009. The court entered an amended order containing a Rule 54(b) certification on April 15, 2009. This appeal followed.

### Standard of Review

■ Because juvenile proceedings are equitable in nature, the standard of review on appeal is de novo. *Judkins v. Duvall,*

97 Ark.App. 260, 248 S.W.3d 492 (2007). However, we do ∣₆not reverse the circuit court's findings of fact unless they are clearly erroneous. *Id.* We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Id.* This deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interests of the children. *Id.*

### Arguments on Appeal

■ In her first point, Hardy argues that the circuit court erred by *sua sponte* ordering that no reunification services would be provided because Arkansas Code Annotated section 9–27–329 required at least fourteen days' notice. DHS concedes that Hardy was entitled to notice at the time of the hearing. Although DHS has confessed error as to this point, we have an independent obligation to evaluate Hardy's argument on the record presented and the governing law. *Burrell v. State,* 65 Ark.App. 272, 986 S.W.2d 141 (1999). The proper administration of the law cannot be left merely to the stipulation of the parties. *Id.* at 276, 986 S.W.2d at 143.

■ Section 9–27–329(c)(2), as it existed at the time of the hearing, provided as follows:

(2) (A) In dependency-neglect cases, if the Department of Human Services, the attorney ad litem, or the court recommends that reunification services should not be provided to reunite a child with his or her family, the department, attorney ad litem, or court shall provide notice to the defendants.

(B) The notice shall be provided to the parties at least fourteen (14) calendar days before the hearing.

∣₇(C) The notice shall identify in sufficient detail to put the family on notice the grounds for recommending no reunification services.

Ark.Code Ann. § 9–27–329(c)(2) (Repl. 2008).[1]

Section 9–27–329 uses mandatory language to provide that fourteen days' notice is required for a recommendation that no reunification services be provided. *See Walters v. Arkansas Dep't of Human Servs.,* 77 Ark.App. 191, 72 S.W.3d 533 (2002)(holding that the word "shall" in a statutory context indicates mandatory compliance with the statute's terms). The basic rule of statutory construction is to give effect to the intent of the legislature. *State Office of Child Support Enforcement v. Morgan,* 364 Ark. 358, 219 S.W.3d 175 (2005). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of the statute is plain and unambiguous, conveying a clear and definite meaning, we need not resort to the rules of statutory construction. *Cooper Clinic, P.A. v. Barnes,* 366 Ark. 533, 237 S.W.3d 87 (2006). Applying the plain language of the statute, it is clear that the circuit court

---

1. After the order appealed from was entered, section 9–27–329 was amended to delete the provisions concerning termination of reunification services. Those provisions were transferred and expanded in a new section, Ark. Code Ann. § 9–27–365. The general rule is that, unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively. *See JurisDictionUSA, Inc. v. Loislaw.com, Inc.,* 357 Ark. 403, 183 S.W.3d 560 (2004).

erred in not providing Hardy with notice that the court was considering not reunifying Hardy with A.L.H.

We reverse the case with directions that the parties comply with the requirements for no-reunification-services hearings. We need not reach Hardy's second point. After the conclusion of any no-reunification proceedings, the circuit court is authorized to revisit the placement of the children.

Reversed and remanded.

KINARD and HENRY, JJ., agree.