2010 Ark. App. 618

**M.F.1 and M.F.2 and Arkansas Department of Human Services, Appellants**

v.

**Marquis FOSTER, Appellee.**

**No. CA 10–403.**

Court of Appeals of Arkansas.

Sept. 22, 2010.

Keith L. Chrestman, Jonesboro, Tabitha Baertels McNulty, Little Rock, for appellant.

Deborah Ruth Sallings, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

Appellants M.F.1 and M.F.2 are the children of Marquis Foster. M.F.1 was born on January 7, 2007, with drugs in his system. M.F.2 was born on November 21, 2007, also with drugs in his system. Appellants' mother, Latasha Tucker, whose parental rights were terminated, is not a part of this appeal. This case began when M.F.1 was five days old and removed from Tucker's custody. M.F.2 also entered foster care immediately after his birth. Foster was listed as the putative father when this case began but his paternity was not established until summer 2009, after the mother's parental rights were terminated. He was sentenced to ten years' imprisonment as a habitual offender in 2008. In February 2010, the Jefferson County Circuit Court denied the attorney ad litem's petition on behalf of the children to terminate Foster's parental rights. The attorney ad litem filed a notice of appeal. We affirm.

On January 19, 2007, the circuit court entered an order for emergency custody of M.F.1. The court found M.F.1 dependent-neglected because of abandonment and neglect. The court set the goal of the case as reunification, with a concurrent goal of relative placement, and directed reunification services toward Tucker. The order entered following the July 25, 2007 review hearing indicated that Foster's address was unknown and stated that DHS had made reasonable efforts to achieve reunification "with mother." The court ordered that the child would remain in DHS's custody and that there would be no contact between the mother, the child, and Foster.

The order entered following the October 31, 2007 review hearing indicated that Foster's address was the county jail and that the goal continued to be reunification with the mother. The court stated:

[T]he mother and father, Marquis Foster, Sr. are still associating together; he has charges for hitting the former landlord; the mother is pregnant again and she tested POS for Cocaine on October 31, 2007 in this Court and was tested again at today's hearing and the results were: POS for THC. The Department will locate information on what charges are against the father, Marquis Foster, Sr., against Ms. Bateman, and the mother, Latasha Tucker.

The court entered an order for emergency custody of M.F.2 on November 28, 2007. The probable-cause order reflected that Foster was not present and was in the Jefferson County jail. On January 16, 2008, the court held an adjudication hearing for M.F.2. The court noted on the order that Foster was still in the county jail and set the goal of reunification.

On January 16, 2008, the court held a permanency-planning hearing for M.F.1. The court continued the goal of reunification with the mother and a concurrent goal of adoption. The court held a fifteen-month permanency-planning hearing on May 7, 2008, for M.F.1. Foster was not present and his address was indicated on the order as the county jail. The court stated that the mother had made minimal progress and that it would continue reunification efforts for two to three months if she made every effort to follow the case plan and court orders. It also found that DHS had made reasonable efforts to achieve reunification with the mother. The court held a review hearing for M.F.2 on May 7, 2008. Foster was not present and was still in the county jail. The court directed that reunification efforts would continue.

The court held a review hearing for both children on June 25, 2008, while Foster was still in the county jail. The court continued the goal of reunification with the mother but noted that the department intended to file a motion for termination. The court indicated that the concurrent goal for both children was adoption and that a thirty-day home visit did not go well because the mother had tested positive for THC ten days into the visit. It also stated that the father had failed to comply with the case plan; had not been in the courtroom; and had spent most of his time in jail. The court stated that DHS had made reasonable reunification efforts with the mother. The court held another review hearing for both children on September 24, 2008, while Foster was still in the county jail. The court stated that the goal would be adoption for the children and relieved DHS of providing services to the mother.

The court held a permanency-planning hearing for both children on December 3, 2008. Again, Foster's address was listed as the county jail. The order noted that the mother had not complied with the case plan and had tested positive for THC again. The court stated that the children were not being taken care of by a relative and that termination of parental rights was in their best interest.

On February 18, 2009, the court held a hearing on DHS's petition for termination, which Foster attended with his attorney. The court entered an order terminating the mother's parental rights but ordered DHS to develop a case plan for Foster and directed the parents to provide DNA samples to establish paternity. The court held a review hearing on May 13, 2009, which Foster attended with his attorney. The court continued the goal of reunification with Foster and found that DHS had made reasonable efforts. The court held a fifteen-month review hearing on October 7, 2009, which Foster attended with his attorney. It stated that the goal would be to obtain a permanent custodian with a con-

current goal of reunification with Foster. It permitted supervised visitation with the paternal grandmother.

On November 9, 2009, the attorney ad litem filed a petition to terminate Foster's parental rights. At that time, Foster was in the custody of the Arkansas Department of Correction. The petition was based on the children's having lived outside of the home for more than twelve months without the conditions that caused removal having been remedied; on Foster's failure to provide significant material support in accordance with his means or to maintain meaningful contact with the children during that twelve-month period; and on other factors, *i.e.*, Foster's sentence in a criminal proceeding for a period of time that would constitute a substantial period of the children's lives, which had arisen subsequent to the filing of the original petition for dependency-neglect.

The court held a hearing on February 3, 2010, on the termination petition, which Foster attended with his attorney. Tarissa Correll, the case worker, admitted that DHS had offered reunification services only to the mother, but had given Foster transportation for visitation before he went to jail. She did not think that the classes Foster had taken in prison had prepared him for custody, but thought that it would take him at least six months after parole for him to be able to take custody. The foster mother testified that she wanted to adopt the children and that they considered her their mother. Foster testified that he had taken all available classes and pursued his GED in prison; that his parole plan had been approved; that he expected to be paroled to his aunt's house within a month after the termination hearing; that he had a job with his uncle waiting; and that, after he worked awhile, he would obtain a home for his sons.

On February 12, 2010, the court entered an order denying the attorney ad litem's petition for termination of parental rights. The court found that the father's participation in DNA testing and classes in prison alone constituted "significant and measurable progress," because he had been incarcerated for the majority of the case. The court also stated:

The Court is also making a specific finding that waiting until August 2010 (the Court's anticipated reunification date), after 42 months in foster care for M.F.1 and 32 months for M.F.2, is achieving permanency within a time frame consistent with the children's needs. The Court blames DHS for failing to establish paternity expeditiously and for failing to consistently provide due process to the father and finds that he is entitled to more time.

The Court is not looking at the paternal grandmother at this point, but instead will authorize supervised visits with the father upon release and orders the father to contact DHS upon release from prison. The case shall be staffed within 14 days of said release.

The children through their attorney ad litem filed a timely notice of appeal.

On appeal, the children first argue that the trial court erred in ordering reunification services to Foster after they had been in foster care for more than fifteen months. The de novo standard of review applies to this argument. *Hardy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 751, 351 S.W.3d 182. We will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Id.* The juvenile code requires the circuit court to conduct a permanency-planning hearing twelve months after a child enters foster care and after a juvenile has been in an out-of-home placement for fifteen of the previous twenty-two months. Ark.Code

Ann. § 9–27–338(a)(1)(A), (B) (Repl.2009). This is in keeping with federal law that conditions funding to this State. 42 U.S.C. § 671(a)(16); 42 U.S.C. § 675(5)(C). Generally, federal funding for reunification services ceases when the child has been in foster care for fifteen months. 42 U.S.C. § 629(a)(7). Federal law requires Arkansas to seek termination of parental rights when the child has been in foster care for fifteen of the most recent twenty-two months. 42 U.S.C. § 675(5)(e). This requirement does not apply, however, if one of three enumerated circumstances exists. Arkansas's companion statute, Arkansas Code Annotated section 9–27–359(b) (Repl. 2009), provides in part:

> (b) The circuit court shall authorize the department to file a petition to terminate parental rights unless:
>
> (1)(A) The child is being cared for by a relative or relatives; and
>
> (B) Termination of parental rights is not in the best interest of the child;
>
> (2)(A) The department has documented in the case plan a compelling reason why filing a petition is not in the best interest of the child; and
>
> (B) The court approves the compelling reason as documented in the case plan; or
>
> (3) The department has not provided to the family of the juvenile, consistent with the time period in the case plan, the services the department deemed necessary for the safe return of the child to the child's home if reunification services were required to be made to the family.

The children argue that none of the exceptions apply here because they were not cared for by a relative; DHS did not document a reason why termination was contrary to their best interest; and DHS provided the family services necessary for the safe return of the children to their home. They assert that the circuit court consistently found that DHS had made reasonable efforts to achieve the case goal of reunification.

Foster responds that federal and state law permit a court to extend reunification services if the agency does not provide reasonable efforts to the family, which DHS did not do. Foster notes that DHS focused all of its reunification services to the mother; that his paternity was not established until summer 2009; that he was not directed to follow any case plan; that he was not represented by counsel until the February 2009 termination proceeding; that he received only transportation to a few early visits with M.F.1; and that, even after the mother's rights were terminated, DHS simply attempted to perform a home study on his mother's home. We agree with Foster that the trial court had authority to extend reunification services to him and that its decision to do so was justified in this situation.

■ In their second point on appeal, the children argue that the trial court erred in finding that the attorney ad litem failed to meet her burden of proof as to the children's best interest and grounds. They ask us to reverse and remand with directions to the circuit court to reconsider the attorney ad litem's termination petition.

■ Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A) and (B) (Repl.2009), the facts warranting termination of parental rights shall be based upon a finding by clear and convincing evidence that termination is in the child's best interest and that at least one statutory ground for termination exists. *Thomsen v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 687, 370 S.W.3d 842. In reviewing the trial court's evaluation of the evi-

dence, we will not reverse unless the trial court clearly erred in finding that the relevant facts were established by clear and convincing evidence. *Id.* Furthermore, we will defer to the trial court's evaluation of the credibility of the witnesses. *Id.*

Arkansas Code Annotated section 9–27–341(b) provides in relevant part:

(3) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:

$|_9$(A) That it is in the best interest of the juvenile, including consideration of the following factors:

(i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

(ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents; and

(B) Of one (1) or more of the following grounds:

(i)(*a* ) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department. to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

.    .    .    .    .

(vii)(*a* ) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has man-

ifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

■■■ The termination statute does not require DHS to prove by clear and convincing evidence that the child is adoptable and that there would be potential harm in returning him to the parent; rather, the court must consider those factors. *Davis v. Ark. Dep't of Health & Human Servs.,* 98 Ark. App. 275, 254 S.W.3d 762 (2007). After consideration of all factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *See Thomsen, supra.* Additionally, the circuit court is not required to affirmatively $|_{10}$identify a potential harm or to find that actual harm would result if the child were returned to the parent. *Id.* The harm analysis is to be conducted in broad terms. *Id.*

There is no dispute that M.F.1 and M.F.2 were very adoptable. Their foster mother testified that she would adopt them and that the children consider her their mother. The case worker also testified that the children were adoptable. Foster's actions, such as committing battery against his former landlady; his convictions for three felonies, for which he was sentenced to ten years in prison; and the no-contact order demonstrated that return to his care at that time posed significant potential harm.

On the subject of grounds, the children cite Arkansas Code Annotated section 9–27–341(b)(3)(B)(ii)(a) and (viii), because they lived outside of the home for at least twelve months and Foster failed to maintain meaningful contact with them, and Foster was sentenced in a criminal proceeding for a period of time that would constitute a substantial period in their

lives. Foster admitted that he last saw them in 2008 before he went to prison on a sentence of ten years. At the time of the termination hearing, M.F.1 was thirty-seven months old and M.F.2 was twenty-six months old.

Even if there existed a basis upon which the trial court could have terminated Foster's parental rights in February 2010, we cannot say that the trial court clearly erred in denying the termination petition at that time. At the conclusion of the hearing, the trial court made it clear that it would give Foster only until August 2010 to rehabilitate himself and that, if he failed to accomplish that goal by then, it would proceed toward termination of his parental rights.

Affirmed.

KINARD and BROWN, JJ., agree.