Cite as 2019 Ark. App. 588

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV

No. CV-18-1024

| | |
|---|---|
| MINOR CHILDREN<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMANS SERVICES AND JACKLYN GABBARD<br><br>APPELLEES | Opinion Delivered: DECEMBER 11, 2019<br><br>APPEAL FROM THE PERRY COUNTY CIRCUIT COURT [NO. 53JV-17-11]<br><br>HONORABLE PATRICIA JAMES, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

MG1, CG, KG, and MG2, minor children,[1] appeal the September 14, 2018 order of the Perry County Circuit Court granting their permanent custody to Lawrence and Melissa Gabbard, paternal uncle and aunt, and closing the dependency-neglect case that appellee Arkansas Department of Human Services (DHS) had brought against the children's parents, Jacklyn and Micah Gabbard.[2] The children also appeal the October 23, 2018 order denying their motion for relief from judgment. They argue on appeal that the circuit court's order should be reversed because (1) the circuit court failed to make a not-best-interest finding;

---

[1]MG1 (born May 7, 2001); CG (born February 19, 2003); KG (born November 15, 2006); and MG2 (born July 31, 2013). MG1 reached the age of majority in May 2019.

[2]We originally dismissed this appeal for lack of jurisdiction. *See Minor Children v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 242, 576 S.W.3d 67. The Arkansas Supreme Court granted the minor children's petition for review, vacated our decision, and remanded to this court. *Minor Children v. Ark. Dep't of Human Servs.*, 2019 Ark. 243, 582 S.W.3d 843.

(2) no written home study was presented to the court; and (3) the circuit court failed to give the statutorily required notice that the case would be closed. DHS did not file a responsive brief, but Jacklyn did. We affirm.

I. *Facts*

DHS took emergency custody of the children on September 20, 2017, due to Jacklyn's erratic behavior and suspected drug use. An ex parte petition and order for emergency custody and dependency-neglect that placed the children in DHS custody was filed on September 22. The September 25 probable-cause order continued them in DHS's custody but mentioned a provisional placement with a relative.

The children were adjudicated dependent-neglected as a result of parental unfitness and neglect by Jacklyn in an order filed November 8. That order states that Micah contributed to the dependency-neglect by agreeing to leave the children in Jacklyn's care following their divorce, knowing her drug history. In the review order of March 7, 2018, the court indicated that the case goal was reunification with a concurrent goal of relative placement or guardianship. The circuit court found that the children should remain out of Jacklyn's custody and noted that they were in the foster home of their aunt and uncle.

The children filed a motion to suspend visitation and for no contact against Jacklyn on April 6, 2018. The motion was premised on safety concerns due to Jacklyn's "increasingly erratic behavior and desperation." Jacklyn filed a response on April 20, asking the court to deny the motion. The court entered an order on April 23, suspending visitation and ordering no contact between Jacklyn and the children.

The permanency-planning hearing (PPH) took place on August 27. At the hearing, DHS, the attorney ad litem, MG1, Lawrence, and Melissa all advocated for the termination of Jacklyn's and Micah's parental rights over permanent custody. The circuit court took the testimony under advisement. It issued a PPH order and an order of permanent custody on September 14, granting permanent custody to Lawrence and Melissa Gabbard and closing the case.

On the children's behalf, the attorney ad litem filed a motion for relief from judgment, decree, or order pursuant to Rule 60 of the Arkansas Rules of Civil Procedure on September 24. Jacklyn filed a response on October 8, asking the circuit court to dismiss the motion. A notice of appeal was filed on October 12, appealing the circuit court's September 14 order granting permanent custody. The circuit court entered an order on October 23, denying the Rule 60 motion. An amended notice of appeal was filed on November 2, appealing both the September 14 and October 23 orders.

II. *Applicable Law and Standard of Review*

This court reviews findings in dependency-neglect proceedings de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous. *Whitt v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 449, at 4, 441 S.W.3d 33, 35. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We give great deference to the circuit court as it is in a far superior position to judge the credibility of the witnesses. *Id.*

3

Arkansas Code Annotated section 9–27–338(c)(1)–(7) (Supp. 2017) provides in pertinent part as follows:

(c) At the permanency planning hearing, based upon the facts of the case, the circuit court shall enter one (1) of the following permanency goals, listed in order of preference, in accordance with the best interest, health, and safety of the juvenile:

(1) Placing custody of the juvenile with a fit parent at the permanency planning hearing;

(2) Returning the juvenile to the guardian or custodian from whom the juvenile was initially removed at the permanency planning hearing;

(3) Authorizing a plan to place custody of the juvenile with a parent, guardian, or custodian[;]

. . . .

(4) Authorizing a plan for adoption with the department's filing a petition for termination of parental rights unless:

(A) The juvenile is being cared for by a relative and the court finds that:

(i) Either:

(a) The relative has made a long-term commitment to the child and the relative is willing to pursue guardianship or permanent custody; or

(b) The juvenile is being cared for by his or her minor parent who is in foster care; and

(ii) Termination of parental rights is not in the best interest of the juvenile[.]

. . . .

(B) The department has documented in the case plan a compelling reason why filing such a petition is not in the best interest of the juvenile and the court approves the compelling reason as documented in the case plan; or

(C)(i) The department has not provided to the family of the juvenile, consistent with the time period in the case plan, such services as the department deemed

4

necessary for the safe return of the juvenile to the juvenile's home if reunification services were required to be made to the family.

. . . .

(5) Authorizing a plan to obtain a guardian for the juvenile;

(6) Authorizing a plan to obtain a permanent custodian, including permanent custody with a fit and willing relative; or

(7)(A) Authorizing a plan for another planned permanent living arrangement that includes a permanent planned living arrangement and addresses the quality of services, including, but not limited to, independent living services, if age appropriate, and a plan for the supervision and nurturing the juvenile will receive.

III. *Argument*

A. Not–Best–Interest Finding

Appellants argue that Arkansas Code Annotated section 9-27-338 provides detailed instructions to circuit courts. They contend that the court is to enter one of the seven goals listed in order of preference "in accordance with the best interest, health, and safety of the juvenile." Each goal has qualifications. Appellants argue that if the first permanency goal's requirements are not met, the court must consider the second in continuing order. Appellants contend that the first three preferences were not options because of the father's incarceration and the mother's homelessness, unemployment, lack of transportation, and being out of compliance with the case plan. Further, there was a ten-year no-contact order to keep Jacklyn from her children.

Accordingly, appellants argue that the fourth preference—adoption—authorizing DHS to file a petition for termination of parental rights, was preferred. Appellants maintain that the circuit court must authorize this plan unless the children are being cared for by a

5

relative and the circuit court finds that termination is not in the children's best interest. Ark. Code Ann. § 9-27-338(c)(4)(A)(i)–(ii). Appellants contend that the circuit court did not make a not-in-the-best-interest finding. They argue that the circuit court's best-interest finding—that the children should remain with the aunt and uncle—is not the same as a finding that termination was *not* in their best interest.

Appellants argue that DHS, the attorney ad litem, and the CASA report recommended termination of parental rights due to Jacklyn's unstable life and Micah's incarceration—making reunification impossible. They contend that the aunt and uncle are stellar, and the children are thriving in their care. They assert that the circuit court agreed and that the aunt and uncle wanted to adopt. Appellants argue that adoption would have given them permanency. They rely on the oldest child's testimony that they all want their aunt and uncle to be their mom and dad. Appellants claim that these facts do not support a finding that it was not in their best interest to terminate parental rights. Appellants ask that this case be reversed and remanded with instructions that the circuit court either select the adoption permanency plan or explain why termination is not in the children's best interest.

Appellants point out that DHS did not document a compelling reason why termination was not in their best interest. *See* Ark. Code Ann. § 9-27-338(c)(4)(B). Appellants claim that DHS determined that it was. Also, appellants argue that DHS did provide sufficient reunification services; thus, the circuit court's failure to order adoption was erroneous. *See* Ark. Code Ann. § 9-27-338(c)(4)(C).

Appellants assert that the circuit court's rationale—that any error was harmless—does not make sense. The circuit court reasoned that no matter the permanency goal, DHS, the

attorney ad litem, or both could still file a termination petition. However, appellants contend that this is not true because the case was closed; thus, there is no case in which to file the petition. The circuit court also reasoned that because the Juvenile Code includes a provision to reinstate terminated parental rights, adoption is no longer permanent. Appellants argue that Arkansas Code Annotated section 9-27-370 (Supp. 2017), which provides for reinstatement of parental rights, is reserved for limited circumstances, including when children are not yet adopted. However, they argue that adoption forever severs a natural parent-child relationship. *See* Ark. Code Ann. § 9-9-215 (Repl. 2015) (adoption decree effects). Appellants maintain that the likelihood that their aunt and uncle would adopt is strong.

Jacklyn argues that we should affirm. She contends that the circuit court considered the preferences and that the children were placed with relatives throughout the proceeding. She claims the circuit court clearly ruled that by continuing the juvenile case toward termination, which may have occurred, plus the appeal time, which would prolong the anxiety, was not in the children's best interest. She asserts that permanent custody may not be what the children wanted or chose, but the circuit court had the authority to make that decision by a preponderance of the evidence, and that evidence should not be reweighed.

In their reply brief, appellants contend that they are not asking that the evidence be reweighed. They maintain that the not–in–the–best–interest finding is either in the circuit court's order or it is not. We hold that the circuit court made a not–in–the–best–interest finding.

The order states:

The juveniles' best interests are met in continuing to reside where they are, with their aunt and uncle. Testimony by the girls' therapist indicated they initially worked through some trauma issues, but their concerns now are more appropriate for normal children. This Court finds great significance in Ms. Brown's testimony that the girls' anxieties escalate when Court hearings are forthcoming, because of the stress of Court itself and the uncertainty of what will happen. Granting permanent custody to the paternal aunt and uncle today will alleviate this source of stress and anxiety for the girls. Permanency would be achieved. They could then go on to occupy themselves solely with age-appropriate concerns, and according to Ms. Brown, also move towards discharge from therapy.

The Court appreciates the Attorney Ad Litem's and DHS's arguments in favor of termination of parental rights. The parties neglect to fully appreciate that change of goal does not predetermine the outcome of the termination hearing. There is a strict, high, burden of proof. Appeals often result and are frequently lengthy. No outcome is guaranteed until a final order is entered by the highest reviewing authority. Even then, the legislature has now opened the door for termination of parental rights to be "unterminated" under certain circumstances. While adoption is slightly higher on the preferred permanency planning list than permanent custody, it is by no means truly a more certain or "more permanent" plan. It should also be noted that a finding of permanent custody leaves other options available to the parties to pursue in the future as they see fit, depending on their circumstances and desires.

Further, the Court has to consider the parents' rights in determining what the outcome of this case is. Their rights have to be weighed against the children's best interests, with balances struck at times when permanency can be achieved with no detriment accrued to either side. The result required by law sometimes means that neither side fully obtains what they want at that given time. This is frequently the case in life, as well.

Based on the relatives who are willing to make a long term commitment to the children, the fact that the children will maintain their familial ties by remaining in their current placement, the ages of all four children, that the uncle testified that he would consider future visitation between the girls and their parents if he believed it to be good for the girls, and other findings as made in this Order, the Court finds there is not at this time a compelling reason to move towards termination of parental rights instead of achieving today a permanency goal of permanent custody.

Lawrence and Melissa Gabbard are advised that they cannot give or attempt to give custody of the children to anyone without order from a court of competent jurisdiction. Lawrence and Melissa Gabbard are authorized to pursue child support from either or both parents on behalf of any or all of these four (4) children. All parties are hereby advised that this case will not reopen for purposes of changes in

8

custody, child support, or visitation. Those must be accomplished by initiating new legal proceedings in a court of competent jurisdiction.

DHS may maintain a protective/supportive services case if such is necessary for the girls to finish counseling, or if the permanent custodians request that one remains open for any other purpose or appropriate service.

Even though the circuit court did not use the phrase "not in the children's best interest," the ruling as set forth above explains why termination was not in the children's best interest. The Juvenile Code does not require "magic words" to be in the order to satisfy a "best interest" inquiry. *Westbrook v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 352, 584 S.W.3d 258. Thus, we hold that the circuit court's order is not clearly erroneous.

B. Home Study

Appellants argue that the code requires that sufficient evidence support a transfer of custody to a relative in a dependent-neglect case. First, there must be a best-interest finding; second, there must be a written and approved home study. *See* Ark. Code Ann. § 9-27-355(b)(1)(F) and (b)(3)(A) (Supp. 2017). Appellants contend that the lack of a written approved home study is the circuit court's most tangible error. DHS did not seek permanent custody, so DHS did not provide a home study and neither did the attorney ad litem. Jacklyn argued for permanent custody as an alternative, but she did not provide a home study, and the circuit court did not ask for one. Appellants claim that because the record does not contain a home study, the evidence was insufficient to support a transfer of custody to the aunt and uncle.

Jacklyn contends that the ad litem cannot recommend placement with the relatives through termination of parental rights at the circuit court level but argue on appeal that

9

placement is not supported because a written home study was not introduced. She also contends that if placement of custody without the benefit of a home study is error, it is harmless. *See Olivares v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 94 (no reversal based on erroneous admission of evidence without showing of prejudice). She argues the evidence was that the children were doing well and that the aunt and uncle were the best permanent placement for them.

Further, she claims that there is no remedy when the circuit court places permanent custody and closes the case without a home study, just as there is no reversal when statutory requirements of timely orders or meetings are not met. In *McKinney v. Arkansas Department of Human Services*, 2017 Ark. App. 475, 527 S.W.3d 778, we held that despite our agreement with appellant that the circuit court clearly erred in failing to hold a PPH, the Juvenile Code contains is no express remedy for such a failure. "When the legislature has not seen fit to fashion a remedy, it is not the province of the court of appeals to do so." *Id.* at 16, 527 S.W.3d at 788–89. We also held in *Turner v. Arkansas Department of Human Services*, 2018 Ark. App. 52, 539 S.W.3d 635, that there is no remedy provided by the legislature for failure to abide by the statutory time limits in Arkansas Code Annotated section 9-27-327 (Supp. 2017).

As in *McKinney* and *Turner*, there is no remedy provided by the legislature for lack of a home study in the home-study requirement set forth in the applicable statute. Further, the evidence relied on by appellants—that their aunt and uncle are stellar and that the children are thriving there—negates their argument that without a home study, the evidence

is insufficient to support custody being placed with the aunt and uncle. Accordingly, we will not reverse the circuit court's decision based on the lack of a home study.

## C. Notice

Appellants argue that the code requires statutory notice before reunification services are ended. *Hardy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 751, at 5, 351 S.W.3d 182, 185. Appellants contend that a circuit court may order that reunification services cease, but the law requires that two conditions exist. First, there must be a written request that the court order services to stop. Ark. Code Ann. § 9-27-365(a)(1)(B) (Repl. 2015). Second, all parties must be served with this written request at least twenty days before a scheduled hearing. *Id.* Appellants argue there was no written request to stop services. Thus, they assert that this case must be reversed. *See Meyers v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 614, at 14–16, 533 S.W.3d 654, 662–63 (reversed because no prior notice given that case would be closed without reunification services); *Hardy, supra.*

Jacklyn argues that this issue is not preserved because it was not presented to the circuit court or included in appellants' motion for Rule 60 relief. *See Kohlman v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595 (holding that because a due-process argument was not raised below, the issue was not preserved for appellate review). Appellants argue that the issue is preserved as a *Wicks* error because it is so flagrant and egregious that the circuit court should have taken steps on its own to remedy it. *See Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980) (no objection is required to preserve an issue for appeal when the error is so flagrant and egregious that the circuit court should, on its own motion,

11

have taken steps to remedy it). Appellants argue that the circuit court ignored a statutory mandate and that the violation was flagrant.

*Wicks* exceptions are rarely applied. *See Pratt v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261. A *Wicks* exception will not apply absent a flagrant error so egregious that the circuit court should have acted on its own initiative. *Weathers v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 142, at 11, 433 S.W.3d 271, 277. Here, there was no objection by any party based on lack of notice that services would stop. The circuit ordered:

> DHS may maintain a protective/supportive services case if such is necessary for the girls to finish counseling, or if the permanent custodians request that one remains open for any other purpose or appropriate service.

Accordingly, we hold that the circuit court did not act in a manner that flagrantly prejudiced appellants so as to justify the application of the *Wicks* exception.

Affirmed.

HARRISON, KLAPPENBACH, SWITZER, and MURPHY, JJ., agree.

BROWN, J., dissents.

**WAYMOND M. BROWN, Judge, dissenting**. I must respectfully dissent from the majority's decision in this case. The majority has erroneously held that the court made the finding necessary to place appellants in their aunt and uncle's permanent custody instead of terminating appellants' parents' parental rights. However, no such finding was made and for that reason, I would reverse and remand.

Following the August 27, 2018 permanency-planning hearing (PPH), the court issued a PPH order and order of permanent custody on September 14, 2018. The order stated in pertinent part:

The parents have not made sufficient progress so that the children can come home today. Father is incarcerated. Mother has no home right now. It was not appropriate when she had one; it is nonexistent now. Mother has a ten-year no contact order with regard to all four children. Neither parent has made substantial, measurable progress such that more time towards reunification or placement is warranted. Father may not be out of incarceration in 90 days, and once he is out, he has to go to a halfway house or chem-free living. Mother has no stability and is not in compliance with medication or services. An extra ninety days will not make a difference towards either parents' stability. They are no closer now to reunification than when the hold was exercised. There is a relative willing to make a long term commitment to these children. The foster parents have done an amazing job in taking care of four children.

The juveniles' best interests are met in continuing to reside where they are, with their aunt and uncle. Testimony by the girls' therapist indicated they initially worked through some issues, but their concerns now are more appropriate for normal children. This Court finds great significance in Ms. Brown's testimony that the girls' anxieties escalate when Court hearings are forthcoming, because of the stress of Court itself and the uncertainty of what will happen. Granting permanent custody to the paternal aunt and uncle today will alleviate this source of stress and anxiety for the girls. Permanency will be achieved. They could then go on to occupy themselves solely with age-appropriate concerns, and according to Ms. Brown, also move towards discharge from therapy.

The Court appreciates the Attorney Ad Litem's and DHS's arguments in favor or termination of parental rights. The parties neglect to fully appreciate that change of goal does not predetermine the outcome of the termination hearing. There is a strict, high, burden of proof. Appeals often result and are frequently lengthy. No outcome is guaranteed until a final order is entered by the highest reviewing authority. Even then, the legislature has now opened the door for termination of parental rights to be "unterminated" under certain circumstances. While adoption is slightly higher on the preferred permanency planning list than permanent custody, it is by no means truly a more certain or "more permanent" plan. It should also be noted that a finding of permanent custody leaves other options available to the parties to pursue in the future as they see fit, depending on their circumstances.

Further, the Court has to consider the parents' rights in determining what the outcome of this case is. Their rights have to be weighed against the children's best

13

interests, with balances struck at times when permanency can be achieved with no detriment accrued to either side. The result required by law sometimes means that neither side fully obtains what they want at that given time. This is frequently the case in life, as well.

Based on the relatives who are willing to make a long term commitment to the children, the fact that the children will maintain their familial ties by remaining in their current placement, the ages of all four children, that the uncle testified that he would consider future visitation between the girls and their parents if he believed it to be good for the girls, and other findings as made in this Order, the Court finds there is not at this time a compelling reason to move towards termination of parental rights instead of achieving today a permanency goal of permanent custody.

Nowhere in the above language does the court make a finding that termination of parental rights was not in the children's best interests. The majority glosses over this fact by holding that "[e]ven though the circuit court did not use the phrase 'not in the children's best interest,' the ruling set forth above explains why adoption was not in the children's best interest." I am not convinced.

The burden of proof in dependency-neglect proceedings, including permanency-planning hearings, is by a preponderance of the evidence.[1] The standard of review is de novo, but we, giving due deference to the circuit court's superior position to observe the parties and judge the credibility of the witnesses, will not reverse the circuit court's ruling in a dependency-neglect case unless the ruling was clearly erroneous or clearly against the preponderance of the evidence.[2] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a

---

[1]*Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 522, 385 S.W.3d 367 (citing Ark. Code Ann. § 9-27-325(h)(2)(B) (Supp. 2017)).

[2]*Churchill v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 530, 423 S.W.3d 637.

14

mistake has been made.[3] Deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to use to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children.[4]

Arkansas Code Annotated section 9-27-338 lists the permanency goals that a circuit court can consider at the permanency-planning stage of dependency–neglect cases. The goals are listed "in order of preference," and the court must select a goal based on the best interest, health, and safety of the juvenile.[5] Arkansas law permits a trial court to set termination or adoption as the case goal even when a relative is available and requests custody.[6] Arkansas Code Annotated section 9-27-338(c)(1)–(6) lists the permanency goals that the circuit court is to consider in determining the best interest of the children. The top preference is to return the juvenile to the parents if it is in the best interest of the juvenile and the juvenile's health and safety can be adequately safeguarded if returned home.[7] The fourth preference is adoption, unless the juvenile is being cared for by a relative and termination of parental rights is not in the best interest of the juvenile.[8] Permanent relative

---

[3]*Id.*

[4]*Ashcroft v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 244, 374 S.W.3d 743.

[5]Ark. Code Ann. § 9-27-338(c).

[6]Ark. Code Ann. § 9-27-338(c)(1)–(6); *Davis v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 469, 375 S.W.3d 721.

[7]*See* Ark. Code Ann. § 9-27-338(c)(1).

[8]*See* Ark. Code Ann. § 9-27-338(c)(4).

placement is listed as the sixth preference.[9]  Thus, according to the public policy of this state, termination and adoption are preferred to permanent relative placement.

Appellants argue as their first point on appeal that the court failed to make a "not-best-interest" finding when granting permanent custody to Lawrence and Melissa and that this was error.  Arkansas Code Annotated § 9-27-338(c)(4) favors adoption unless the juvenile is being cared for by a relative and termination of parental rights is not in the juvenile's best interest.  According to appellants, since the court did not make a finding that termination was not in their best interest, the court should have changed the goal to adoption and kept the case open, not ordered permanent custody and closed the case.  Appellants are correct that the court was required to make a not-best-interest finding concerning termination before their aunt and uncle were granted permanent custody.  Without such a finding, permanent custody should not have been granted.  Therefore, this case should be reversed and remanded for the court to make a finding whether termination of appellants' parents' parental rights was in appellants' best interest.  If the count finds that termination of parental rights was not in the appellants' best interest, the permanent-custody order should state as much; however, if the court finds otherwise, it should enter an order consistent with that finding.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellants.

*Dusti Standridge*, for appellee, Jacklyn Gabbard.

---

[9]*See* Ark. Code Ann. § 9-27-338(c)(6).